# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MAGDI ABDELAZIM ABDAL YOUSSEF,
*Defendant-Appellant.*

No. 07-10335

D.C. No.
CR-06-00667-SMM

OPINION

Appeal from the United States District Court
for the District of Arizona
Stephen M. McNamee, District Judge, Presiding

Submitted July 14, 2008*
San Francisco, California

Filed November 5, 2008

Before: Jerome Farris, Eugene E. Siler, Jr.** and
Carlos T. Bea, Circuit Judges.

Per Curiam Opinion

---

*The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

## COUNSEL

James Sun Park, Park Law Office, PLC, Phoenix, Arizona, for the plaintiff-appellant.

Diane J. Humetewa, United States Attorney; John R. Lopez IV, Deputy Appellate Chief; Sarah L. Hartnett, Special Assistant United States Attorney, Phoenix, Arizona, for the defendant-appellee.

## OPINION

PER CURIAM:

Magdi Youssef appeals his conviction for making a false statement in an immigration document in violation of 18 U.S.C. § 1015(a).[1] We are called upon to decide whether vio-

---

[1]18 U.S.C. § 1015(a) states:

Whoever knowingly makes any false statement under oath, in any

lation of § 1015(a) requires the false statement to be "material" as an element of the offense. We hold that it does not, and affirm Youssef's conviction.

## I.　Factual and Procedural Background

Youssef, a citizen of Egypt, was admitted to the United States on a six-month visitor visa on February 4, 1999. On August 6, 1999, Youssef's authorization to stay in the United States was extended to February 3, 2000. Notwithstanding, Youssef remained in the United States beyond that date without further authorization. On January 30, 2001, removal proceedings were initiated against Youssef.

Three years later, and while his removal proceedings were pending, Youssef married a U.S. citizen. He then filed a Form I-485 with the Department of Homeland Security to adjust his status to a lawful permanent resident by virtue of his marriage to a U.S. citizen. Youssef signed the Form I-485, attesting, under penalty of perjury, the information in the Form I-485 was true and correct. One question on the form asked Youssef if he had "ever, in or outside the U.S. been arrested, cited, charged, indicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic violations." Youssef checked "No."

Contrary to this response, Youssef had been arrested, charged, and convicted of knowingly disobeying or resisting the lawful order, process, or mandate of the court, in violation of Arizona Revised Statute § 13-2810(A)(2) in August 2000.[2]

_____

case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens . . . shall be fined under this title or imprisoned not more than five years, or both.

[2]Specifically, Youssef was convicted of interference with a judicial proceeding (disobeying an order of protection) in violation of Arizona

Youssef was sentenced to 17 days' imprisonment and 1 year of probation for this offense.

Based on Youssef's false statement on the Form I-485, the Government charged Youssef in an indictment with making a false statement in an immigration document in violation of 18 U.S.C. § 1015(a).[3] Youssef waived the right to a jury trial. Prior to commencement of a bench trial, both parties raised in pretrial memoranda and at a pretrial hearing the issue whether § 1015(a) requires the false statement made on the immigration document to be material[4] as an element of the offense (hereinafter "materiality requirement").

The district court held there was no materiality requirement in 18 U.S.C. § 1015(a). The district court reasoned the language at issue in § 1015(a) ("any false statement") had a plain and unambiguous meaning that did not include a materiality requirement, because the statute does not include the word

---

Revised Statute § 13-2810(A)(2) in Phoenix Municipal Court. Youssef's brother-in-law, Mohamed Tohaima, obtained a protection order against Youssef on August 3, 1999. On March 31, 2000, Tohaima called the Phoenix Police Department to report Youssef had come to his residence, knocked on the front door, and threatened to kill him. Youssef was arrested and charged with violating the protection order. On August 9, 2000, the Phoenix Municipal Court found Youssef guilty of violating Arizona Revised Statute § 13-2810(A)(2), which makes it a class 1 misdemeanor to "disobey or resist the lawful order, process or other mandate of a court."

[3]18 U.S.C. § 1015(a) states:

> Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens . . . shall be fined under this title or imprisoned not more than five years, or both.

[4]"[A] concealment or misrepresentation is material if it has a natural tendency to influence, or was capable of influencing, the decision of the decisionmaking body to which it was addressed." *Kungys v. United States*, 485 U.S. 759, 770 (1988).

"material." Further, the district court held none of the terms used in § 1015(a) had an established meaning at common law that included a materiality requirement. *See Neder v. United States*, 527 U.S. 1, 21 (1999) ("[W]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms."). Thus, the district court refused to infer a materiality requirement into the statute.

After a bench trial, the district court found Youssef had knowingly made a false statement on his Form I-485, in violation of 18 U.S.C. § 1015(a). Because the district court concluded § 1015(a) did not include a materiality requirement, the district court did not make any findings of fact on the issue whether Youssef's false statement on the Form I-485 was material. The district court sentenced Youssef to a term of "time served" (the period of pre-trial detention), to be followed by three years' supervised release. This timely appeal followed.

## II.   Standard of Review

Questions of statutory interpretation are reviewed *de novo*. *United States v. Ray*, 375 F.3d 980, 988 (9th Cir. 2004).

## III.   Discussion

**[1]** The sole issue presented on appeal is a question of statutory interpretation: Does 18 U.S.C. § 1015(a) require the false statement to be "material" as an element of the offense? This is an issue of first impression in this court.

### A.   Statutory Interpretation

The interpretation of a statute is a two-step process. The first step is to "determine whether the language at issue has a plain and unambiguous meaning." *Robinson v. Shell Oil*

*Co.*, 519 U.S. 337, 340 (1997). The statutory language is interpreted by reference "to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. This does not end our inquiry, however, because "in interpreting statutory language there is a necessary second step." *Neder*, 527 U.S. at 21-22. "It is a well-established rule of construction that [w]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Id.* (citations and internal quotation marks omitted).

### 1. The plain language of § 1015(a) does not require the false statement to be material.

**[2]** In *United States v. Wells*, 519 U.S. 482 (1997), the Supreme Court analyzed whether 18 U.S.C. § 1014, which criminalizes "knowingly mak[ing] any false statement or report . . . for the purpose of influencing in any way the action of a Federal Deposit Insurance Corporation insured bank," required the false statement or report to be material as an element of the offense. *Id.* at 490 (internal citations omitted). The Court held there was no materiality requirement in § 1014 because the plain language of the statute did not expressly include the word "material." *Id.* To the contrary, § 1014 covered "any false statement or report" and nowhere in the statute did it say "a material fact must be the subject of the false statement or so much as mention materiality." *Id.*[5]

**[3]** The text of § 1015(a) is practically identical to § 1014. As in *Wells*, § 1015(a) does not include an express materiality requirement:

---

[5]The Court did not find § 1014's recitation that the statement must have the "purpose of influencing" to be the equivalent of the definition of "material," as defined by *Kungys v. United States*, 485 U.S. 759, 770 (1988). Rather, it straightforwardly found that "materiality" was simply not an element of § 1014.

> [W]hoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens . . . shall be fined under this title or imprisoned not more than five years, or both.

Rather, as in *Wells*, § 1015(a) criminalizes the making of "any false statement"—whether the false statement is material or immaterial. Thus, under the plain text of the statute, materiality of the false statement is not an element of § 1015(a).[6]

> ### 2. None of the words used in § 1015(a) have an established meaning at common law that includes a materiality requirement.

[4] Next, we must determine whether § 1015 uses a term that includes a materiality requirement at common law. *Neder*, 527 U.S. at 21-22. Section 1015(a) uses the term "false statement," which the Supreme Court in *Wells* held did not include a materiality requirement at common law. *See Wells*, 519 U.S. at 491 ("[A]t common law the term 'false statement' [did not] acquire[ ] any implication of materiality."); *see also Neder*, 527 U.S. at 23, n.7 (reiterating the Court's holding in *Wells* that "the term 'false statement' does not imply a materiality requirement"). Likewise, in *United States v. Hart*, 291 F.3d 1084, 1085 (9th Cir. 2002), where this court held there

---

[6]We are not alone in so deciding. The Fourth Circuit has so held. *United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003). In a two-page opinion, the Fourth Circuit reasoned there was no express language in § 1015(a) imposing a materiality requirement. It cited *Wells* as controlling authority: "Nowhere does [the statute] further say that a material fact must be the subject of the false statement or so much as mention materiality." *Id.* at 278-79 (citing *Wells*, 519 U.S. at 490). The Fourth Circuit held none of the terms used in § 1015 had a settled meaning at common law that includes a materiality requirement. *Id.* at 279. It concluded materiality of the false statement was not an element of § 1015(a). Our research has not found any other circuit court determination on the question.

was no materiality requirement in 18 U.S.C. § 1542, which makes it a crime willfully and knowingly to make "any false statement in an application for [a] passport." This court held there was no materiality requirement in § 1542 because there was no mention of materiality in the statute, and the phrase "false statement" did not have a settled meaning at common law requiring proof of materiality. *Id.*

**[5]** Thus, the terms in § 1015 do not have a settled meaning at common law requiring proof of materiality and we will not read a materiality requirement into the statute.

### 3.   Where Congress has intended to criminalize the making of *material* false statements, it has expressly done so.

**[6]** Congress has expressly used the word "material" in other provisions that criminalize the making of false statements, such as 18 U.S.C. § 1001(a).[7] Congress's omission of "material" from § 1015(a), combined with its inclusion of "material" in a similar statutory provision (§ 1001(a)), is evidence of Congress's expressed intent not to impose a materiality requirement in § 1015(a). *See Russello v. United States,*

---

[7]Section § 1001(a) states in pertinent part:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1)   falsifies, conceals, or covers up by any trick, scheme or device a material fact;

(2)   makes any *materially false*, fictitious, or fraudulent statement or representation; or

(3)   makes or uses any false writing or document knowing the same to contain any *materially false*, fictitious, or fraudulent statement or entry;

shall be fined under this title [or imprisoned, or both].

(emphasis added).

464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Although § 1015(a) and § 1001(a) were not enacted as part of the "same Act" within the meaning of *Russello*, they are both located within Chapter 47 of Title 18 of the United States Code, which deals with "Fraud and False Statements." Section 1001(a) explicitly requires a false statement to be material. Congress could have written a materiality requirement into § 1015(a) as it did in § 1001(a), but chose not to do so.

[7] Under the *Russello* rationale, § 1015(a) should be interpreted as Congress enacted it, without a materiality requirement. Therefore, we do not interpret § 1015 to include a materiality requirement.

## IV.  CONCLUSION

We affirm the district court's judgment.

**AFFIRMED.**