**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

v.

PIERCE O'DONNELL,
  *Defendant-Appellee.*

No. 09-50296

D.C. No.
2:08-cr-00872-
SJO-1

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted
January 13, 2010—Pasadena, California

Filed June 14, 2010

Before: Alfred T. Goodwin, William C. Canby, Jr., and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

## COUNSEL

George S. Cardona, Acting United States Attorney, Christine C. Ewell, Assistant United States Attorney, and Erik M. Silber (argued), Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellant.

George J. Terwilliger III (argued), Daniel B. Levin, Darryl S. Lew and Michael H. Huneke, White & Case LLP, Washington, D.C., for the defendant-appellee.

Thomasenia P. Duncan, David Kolker, Kevin Deeley, Erin Chlopak and Steve Hajjar, Federal Election Commission, Washington, D.C., for amicus curiae Federal Election Commission.

Peter Ferrara, American Civil Rights Union, McLean, Virginia, for amicus curiae American Civil Rights Union.

J. Gerald Hebert, Paul S. Ryan and Tara Malloy, Campaign Legal Center, Washington, D.C.; Donald J. Simon, Sonosky, Chambers, Sachse, Endreson & Perry, LLP, Washington, D.C.; Fred Wertheimer, Democracy 21, Washington, D.C., for amici curiae Campaign Legal Center and Democracy 21.

Melanie Sloan, Citizens for Responsibility and Ethics in Washington, Washington, D.C., for amicus curiae Citizens for Responsibility and Ethics in Washington.

## OPINION

FISHER, Circuit Judge:

Federal campaign finance law says that "[n]o person shall make a contribution in the name of another person." 2 U.S.C. § 441f. We hold that this law prohibits a person from providing money to others to donate to a candidate for federal office in their own names, when in reality they are merely "straw donors."

## BACKGROUND

Defendant Pierce O'Donnell is alleged to have contributed $26,000 of his money in 2003 to the Edwards for President campaign through 13 individuals — primarily employees of his law firm as well as some of his relatives. According to the indictment, O'Donnell arranged for these individuals to donate $2,000 ostensibly in their own names but with the understanding that he would either advance them funds or reimburse them after the donation was made. In accord with these allegations, the grand jury charged O'Donnell with, *inter alia*, contributing in the names of others in violation of 2 U.S.C. § 441f. The district court dismissed the § 441f counts, and the government appeals. *See* 18 U.S.C. § 3731. We reverse.

Congress first enacted § 441f as part of the Federal Election Campaign Act of 1971, Pub. L. No. 92-225, 86 Stat. 3 (1972), which was designed to regulate campaign finance by requiring the disclosure of contributions and their sources. In its present form, § 441f states: "*No person shall make a contribution in the name of another person* or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person." 2 U.S.C. § 441f (emphasis added); *see also* 11 C.F.R. § 110.4(b)(2) (applicable regulations).

In 1974, Congress also enacted a new provision, § 441a(a)(8), relating to the reinstatement of contribution limits. *See* Federal Election Campaign Act Amendments of 1974, Pub. L. No. 93-443, 88 Stat. 1263 (1974). Section 441a(a)(8) states:

> For purposes of the limitations imposed by this section, all contributions made by a person, either directly or indirectly, on behalf of a particular candidate, including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to such candidate, shall be treated as contributions from such person to such candidate. The intermediary or conduit shall report the original source and the intended recipient of such contribution to the Commission and to the intended recipient.

2 U.S.C. § 441a(a)(8). Although O'Donnell is not charged with violating § 441a(a)(8), it is relevant because the parties dispute whether and how its passage should influence our interpretation of § 441f.

## STANDARD OF REVIEW

"We review de novo a district court's decision to dismiss an indictment based on an interpretation of a federal statute." *United States v. Marks*, 379 F.3d 1114, 1116 (9th Cir. 2004).

## DISCUSSION

### I.

The issue in this appeal is whether § 441f proscribes only "false name" contributions or, as the government contends, it also prohibits "straw donor" contributions. A false name contribution is a *direct* contribution from *A* to a campaign, where *A* represents that the contribution is from another person who may be real or fictional, with or without obtaining that per-

son's consent. A straw donor contribution is an *indirect* contribution from *A*, through *B*, to the campaign. It occurs when *A* solicits *B* to transmit funds to a campaign in *B*'s name, subject to *A*'s promise to advance or reimburse the funds to *B*. Although employing different methods, false name and straw donor schemes both facilitate attempts by an individual (or campaign) to thwart disclosure requirements and contribution limits. O'Donnell argues as a matter of statutory interpretation that § 441f cannot apply to straw donor contributions because, irrespective of *A*'s role in directing and reimbursing the money, the straw donor *B* has actually made the contribution, which is accurately reported in *B*'s name. We disagree.

Statutory interpretation begins with the text. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). To put the language of § 441f in context, we also consider how related language is used in § 441a(a)(8). *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."). Finally, we analyze § 441f in light of its purpose of promoting disclosure and the broader structure of the Federal Election Campaign Act (FECA). *See Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003) (en banc) ("[T]he structure and purpose of a statute may also provide guidance in determining the plain meaning of its provisions."). Relying on these tools of interpretation, we hold that § 441f unambiguously applies to straw donor contributions.[1]

---

[1]The only court to have squarely addressed this issue concluded that § 441f applies to straw donor contributions. *See United States v. Boender*, ___ F. Supp. 2d ___, 2010 WL 725318 (N.D. Ill. Feb. 24, 2010). Numerous cases have assumed the same. *See, e.g.*, *McConnell v. FEC*, 540 U.S. 93, 232 (2003), *overruled on other grounds by Citizens United v. FEC*, 130 S. Ct. 876, 913 (2010); *United States v. Serafini*, 233 F.3d 758, 763 & n.5 (3d Cir. 2000); *United States v. Kanchanalak*, 192 F.3d 1037, 1042

## A.   The Text of § 441f

**[1]** Section 441f provides:

> No person shall make a contribution in the name of
> another person or knowingly permit his name to be
> used to effect such a contribution, and no person
> shall knowingly accept a contribution made by one
> person in the name of another person.

2 U.S.C. § 441f. Under O'Donnell's interpretation, only the person who personally transmits the contribution has actually made it. Therefore, § 441f is violated only if that person provides a false name. He argues that his alleged scheme, in contrast, did not violate § 441f because the straw donors actually transmitted the contributions, and they properly used their own names.

**[2]** The government agrees that false name contributions violate § 441f, but it argues that the language is sufficiently broad to reach straw donor contributions as well. Under the government's interpretation, the original source of funds has *made* the contribution even though it was actually transmitted by an intermediary, and if the intermediary is named as the source, the contribution has been made "in the name of another." The intermediary, in turn, having acted at the direction and used the funds of the original source, has not made a contribution, but instead has "knowingly permit[ted] his name to be used to effect such a contribution." There is no dispute that the contributions here were made in the names of O'Donnell's intermediaries. The only question is whether such attribution

––––––––––––––––––

(D.C. Cir. 1999); *Goland v. United States*, 903 F.2d 1247, 1251-54 (9th Cir. 1990); *FEC v. Weinstein*, 462 F. Supp. 243, 250 (S.D.N.Y. 1978). O'Donnell has not pointed us to a single counterexample. These decisions do not control our analysis, but the sheer consistency of their assumptions at the least undermines his argument that § 441f should *plainly* be read otherwise.

violated § 441f because it was O'Donnell who actually "made" the contributions.

**[3]** To determine which party in a straw donor scheme "make[s] a contribution," we first look to the statute to understand the meaning of that phrase. A contribution is statutorily defined as "any gift . . . of money . . . made by any person for the purpose of influencing any election for Federal office." 2 U.S.C. § 431(8)(A)(i). The statutory definition clarifies what purpose is required for the gifts to be covered, and there is no dispute that the gifts here were made for the purpose of influencing the presidential primary election. The statutory definition, however, does not specifically address the salient question of *who* made the contributions. Therefore, we look next to the first dictionary definition of "contribute," which is "[t]o give or supply in common with others; give to a common fund or for a common purpose." *Am. Heritage Coll. Dictionary* 303 (3d ed. 2000). Applying that definition, it is clear that O'Donnell gave the money at issue for the common purpose of advancing the Edwards campaign.

**[4]** In ordinary usage, when Friend *B* delivers a gift that was provided by Friend *A*, we say that it was Friend *A* who gave that gift. In the context of gifts, the word "giving" connotes the idea of providing from one's own resources rather than simply conveying, and thus we refer to the original source rather than the intermediary as the one who gave. Section 441f must be understood on this same common sense level. In a straw donor situation, the person who actually transmits the money acts merely as a mechanism, whereas it is the original source who has made the gift by arranging for his money to finance the donation. To identify the individual who has made the contribution, we must look past the intermediary's essentially ministerial role to the substance of the transaction. Accordingly, the statutory language applies when a defendant's funds go to a campaign either directly from him or through an intermediary. In either case, for purposes of § 441f, the defendant has made that contribution — and he

has violated the statute if his own name was not provided as the source.[2]

O'Donnell argues that this interpretation illogically would result in criminalizing conduct when the intermediary is later reimbursed rather than at the time the money is delivered to the candidate's campaign. The concern, in other words, is that the defendant does not actually become the source — and thus no offense takes place — until the defendant reimburses the intermediary, after the donation (with its attendant reporting obligation) has already been made. Consequently, a contribution that was lawful at the time it was made would become unlawful based on subsequent events — a temporal sequence that seems anomalous should the language of § 441f be read as not concerned with anything that happens after the contribution is made.

We note preliminarily that this argument does not apply to the extent that O'Donnell was alleged to have *advanced* funds. When the funds are advanced rather than reimbursed, there is no timing anomaly: O'Donnell made the contributions at the moment they were transmitted to the campaign because he would already have supplied the necessary funds. With regard to reimbursed gifts, we acknowledge that the timing objection would be troubling (perhaps even decisive) when, for example, a defendant reimburses the contributions made by others without any prior arrangements or understandings. We therefore express no view on whether § 441f would apply to that hypothetical defendant. In the present circumstances, however, we reject O'Donnell's view that the contribution would not have been unlawful at the time it was made. When

---

[2]We need not decide whether and under what circumstances the intermediary should also be understood to have made a contribution, such that the intermediary's name must jointly be reported. We note, however, the Federal Election Commission regulation stating that when an intermediary exercises direction or control over a gift, the entire amount must be attributed to both the original source and the intermediary. *See* 11 C.F.R. § 110.6(d).

a defendant arranges to have an intermediary deliver a gift and promises reimbursement, the offense will at least have begun at the moment the contribution arrives at the campaign. Because the indictment alleges that O'Donnell then actually followed through with the reimbursements, we need not decide whether a subsequent failure to actually reimburse the intermediary would negate the offense. Our holding is limited to defendants who, as O'Donnell is alleged to have done, both prearrange for and follow through with the reimbursement of their intermediaries.[3]

**[5]** Considering the plain language of § 441f itself, therefore, we conclude that it encompasses straw donor contributions, whether accomplished through the advancement or reimbursement of funds. Because the context in which language is used is also relevant to plain meaning, we turn to O'Donnell's arguments based on § 441a(a)(8).

### B.   Reading § 441f in Light of § 441a(a)(8)

**[6]** O'Donnell argues that additional language in § 441a(a)(8) but not present in § 441f requires interpreting the latter provision as having a more limited scope, an argument the district court found persuasive. O'Donnell's argument focuses on two phrases in § 441a(a)(8):

> For purposes of the limitations imposed by this section, all contributions made by a person, *either directly or indirectly*, on behalf of a particular candidate, including *contributions which are in any way earmarked or otherwise directed through an intermediary or conduit* to such candidate, shall be treated as contributions from such person to such candidate.

---

[3]O'Donnell's timing argument fails for an additional reason based on § 441a(a)(8), which we discuss in section I.B *infra*.

2 U.S.C. § 441a(a)(8) (emphasis added). He argues that both of these italicized phrases would be unnecessary if the term "contribution" already encompassed indirect gifts delivered through an intermediary. From this language, he infers that "contribution," standing alone, must refer to *direct* contributions delivered without the use of an intermediary. Therefore, § 441f's use of "make a contribution" without any reference to intermediaries or conduits indicates that the provision is limited to false name contributions. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion and exclusion." (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972) (internal quotation marks omitted) (alteration in original))).

O'Donnell's argument is unpersuasive for two reasons. First, Congress enacted § 441f and § 441a(a)(8) at different times, a fact that weakens the *Russello* presumption. *See Gomez-Perez v. Potter*, 128 S. Ct. 1931, 1940 (2008) (explaining that the *Russello* presumption is " 'strongest' in those instances in which the relevant statutory provisions were 'considered simultaneously when the language raising the implication was inserted' " (quoting *Lindh v. Murphy*, 521 U.S. 320, 330 (1997))). We have applied the *Russello* presumption in at least one case in which the two provisions were not enacted at the same time. *See United States v. Youssef*, 547 F.3d 1090, 1094-95 (9th Cir. 2008) (per curiam). But in *Youssef*, the two provisions were more similar in purpose and structure, and these parallels made the absence of a particular word more telling than it otherwise would have been. *See id.*; *see also City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 435-36 (2002) ("The *Russello* presumption . . . grows weaker with each difference in the formulation of the provisions under inspection.").[4] And

---

[4]In *Youssef*, both statutes at issue prohibited false statements to government officials, and one included the word "materially" to modify "false"

even if the parallels were stronger, § 441f was passed three years earlier than § 441a(a)(8), so the choice of wording in the latter offers little insight into the meaning of the former. *See Almendarez-Torres v. United States*, 523 U.S. 224, 237 (1998) (declining to interpret provisions with reference to later enacted laws that did not, among other possibilities, "declare the meaning of earlier law" or "reflect any direct focus by Congress upon the meaning of the earlier enacted provisions").

Second, the *Russello* presumption applies with limited force here because the language used in § 441f is broad rather than specific. Section 441f does not, for example, include "directly" but omit the word "indirectly." Nor does § 441f specify a number of covered ways to "make a contribution" while omitting "conduit" from the list. In either of those situations, the absence of the words used in § 441a(a)(8) could indicate an intention to exclude their application in § 441f. But it makes less sense to draw that inference when, as here, the provision at issue uses broader language that encompasses the meaning of the absent words and thus did not need to expressly include them. *See Royal Foods Co., Inc. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1107 n.6 (9th Cir. 2001) ("Merely because a statute's plain language does not specify particular entities that fall under its definition, does not mean that the statute is ambiguous as to all those who do fall under it.").

**[7]** The comparison to § 441a(a)(8) actually undermines O'Donnell's interpretation, because the language of that provision shows that indirect gifts are merely particular types of

whereas the other did not. Relying in part on *Russello*, we declined to read a materiality requirement into the statute that omitted the modifier. *See Youssef*, 547 F.3d at 1094-95. In this case, as we explain further in section I.D *infra*, the two provisions share some overlap but otherwise are less aligned in purpose and structure than the statutes in *Youssef*.

contributions, subsumed within the general concept. If Congress had understood § 441a(a)(8) to reach more broadly than § 441f, there are several ways it could have so indicated. For example, § 441a(a)(8) could have referred to "contributions, which for purposes of this section include indirect gifts," a construction that would imply that the same word, used elsewhere, should not have that expanded meaning. Similarly, the provision could have referred to "contributions or conduit gifts," which would have suggested that conduit gifts are a distinct concept for which Congress would use a distinct term. Instead, § 441a(a)(8)'s identification of indirect or conduit gifts as particular types of contributions reinforces our conclusion that the unqualified term, standing alone, should be accorded its full range of meaning.

Finally, our examination of § 441a(a)(8) demonstrates that O'Donnell's timing argument regarding § 441f proves too much, because it would preclude liability for reimbursement schemes under the former provision as well. Central to O'Donnell's argument that § 441f does not reach his conduct is his contention that § 441a(a)(8) separately requires that intermediaries report the original source of the funds that they donate. He thus relies on § 441a(a)(8) to argue that his narrow reading of § 441f would not create a loophole for straw donor contributions. Yet both provisions are subject to the same concern about the timing anomaly created by reimbursed gifts. Although § 441a(a)(8) includes additional language regarding indirect contributions, it does not specifically acknowledge that a person who receives the original source's funds *after* transmitting a donation could still be considered an intermediary. Thus, the language of both provisions could be read to focus only on the moment a contribution is made, so they would share the same supposedly anomalous feature of being dependent on the effect of subsequent events. If we agreed that O'Donnell's objection warranted excluding reimbursement schemes from the reach of § 441f, we would have to conclude that § 441a(a)(8)'s reference to indirect contributions similarly encompasses only funds that the original

source has advanced to intermediaries. O'Donnell himself does not read § 441a(a)(8) in this manner, which reinforces our earlier conclusion that § 441f covers such reimbursement schemes so long as they have been prearranged and effectuated.

## C.   Purpose

An examination of statutory purpose reinforces our interpretation of the text. As noted earlier, Congress originally enacted § 441f as part of the Federal Election Campaign Act of 1971, which overall sought to regulate campaign finance through a regime of disclosure requirements. For example, in addition to § 441f's prohibition, the Act required campaigns to keep detailed information about all contributors who donated a minimum amount and to file regular public reports. *See* 2 U.S.C. §§ 432(c), 434(b) (1972). Simultaneously, the Act eliminated the individual contribution limits that had been in place under existing law. *See* 1971 FECA § 203, 86 Stat. at 9-10 (amending 18 U.S.C. § 608). Congress believed that full disclosure would make contribution limits unnecessary. *See* S. Rep. No. 92-229, at 122 (1971).

In this light, the congressional purpose behind § 441f — to ensure the complete and accurate disclosure of the contributors who finance federal elections — is plain. Our reading of the statute as applying to straw donor contributions is entirely consistent with this purpose, because such contributions undermine transparency no less than false name contributions do by shielding the identities of true contributors. The same is true of our specific textual conclusion that O'Donnell *made* the contributions under § 441f, because it is implausible that Congress, in seeking to promote transparency, would have understood the relevant contributor to be the intermediary who merely transmitted the campaign gift.

Moreover, if § 441f were limited to false name contributions, then straw donor schemes would have been unregulated

at least until 1974, when Congress adopted § 441a(a)(8). We think it highly unlikely that a Congress seeking to promote disclosure, and willing to eliminate contribution limits as an alternative means of regulating campaign finance, would have intended to leave out straw donor contributions, which were a recognized concern at the time. *See, e.g.*, Alexander Heard, *The Costs of Democracy* 359-60 (1960) (describing how "[d]ummy contributors" were used both to avoid disclosure as well as to evade contribution limits).

[8] To this reasoning, O'Donnell responds that Congress did leave a loophole in 1971, that the loophole was contrary to FECA's purpose and that Congress therefore closed the loophole by enacting § 441a(a)(8) in 1974. Thus, he contends, the enactment of § 441a(a)(8) confirms his interpretation of § 441f. We disagree. Section 441a and the 1974 amendments to FECA served primarily to reinstate contribution limits. *See* 1974 FECA § 101(a), 88 Stat. at 1263-64. There is nothing in the language of § 441a(a)(8) to indicate that the provision was directed at the disclosure concerns of § 441f. Indeed, had Congress been concerned about a loophole in § 441f, it likely would have amended that provision rather than enacting § 441a(a)(8). Moreover, although § 441a(a)(8) requires the original source of funds to be reported, it addresses only the intermediary's obligations and not the principal offender in the straw donor scheme.[5] In contrast, § 441f under the government's interpretation properly criminalizes the conduct of both parties involved.

---

[5]Although § 441a(a)(8) does not place reporting obligations on the original source, that source could violate 2 U.S.C. § 441a(a)(1)(A) by exceeding the individual contribution limit. Generally, violations of § 441a become felonies when the contributions total $25,000 during a calendar year, in contrast to the $10,000 threshold for violations of § 441f. *See* 2 U.S.C. § 437g(d)(1).

## D.   Structure

Although we reject O'Donnell's argument that § 441a(a)(8) was added to close a loophole for straw donor contributions, we acknowledge that the government's interpretation of § 441f does result in an overlap in FECA's present structure. Both provisions appear to require that a campaign contribution from *A* through *B* be reported as a contribution from *A*. The two provisions serve different purposes, however, making the overlap unsurprising — and legally insignificant. Congress enacted § 441a(a)(8) as part of its reinstatement of contribution limits. As noted above, the provision does not appear to be directed at § 441f's domain of criminalizing disclosure violations, but rather with providing guidance on accounting for purposes of calculating an individual's contribution totals. Given this fundamental difference in purpose, evident from the text of the provisions as well as the context in which they were passed, the overlap is less troublesome than it would be if the two provisions purported to address the same matter. *Cf. TRW Inc. v. Andrews*, 534 U.S. 19, 29-31 (2001) (rejecting an interpretation of a statute's general rule that would have rendered a listed exception superfluous, where both provisions addressed the same issue).

\* \* \*

**[9]** In sum, the text, purpose and structure of § 441f all support the conclusion that the statute applies not only to false name but also to straw donor contributions. We therefore hold that § 441f unambiguously applies to a defendant who solicits others to donate to a candidate for federal office in their own names and either advances the money or promises to — and does — reimburse them for the gifts.

That conclusion forecloses O'Donnell's rule of lenity argument. "The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) (plural-

ity opinion). Lenity does not, however, apply in the absence of a "grievous ambiguity," *Huddleston v. United States*, 415 U.S. 814, 831 (1974), that requires us to "guess as to what Congress intended," *Ladner v. United States*, 358 U.S. 169, 178 (1958). We are sensitive to the need to require fair notice to defendants, but here the statutory language, structure and purpose do not leave the provision's meaning "genuinely in doubt." *United States v. Otherson*, 637 F.2d 1276, 1285 (9th Cir. 1980); *see also Barber v. Thomas*, 560 U.S. ___, No. 09-5201, slip op. at 13-14 (2010). The fair notice concern seems especially inapposite in this case, because O'Donnell seeks to create a textually dubious loophole for himself by reading the two provisions to criminalize only the behavior of the accomplices who acted at his direction.

In any event, O'Donnell has at most shown that a narrower interpretation of § 441f is conceivable, but that is insufficient to establish ambiguity. *See Smith v. United States*, 508 U.S. 223, 239 (1993) ("The mere possibility of articulating a narrower construction . . . does not by itself make the rule of lenity applicable."); *Otherson*, 637 F.2d at 1285 ("[D]isputed words or phrases in criminal laws have in many instances been interpreted broadly, defeating defendants' claims." (citing *Huddleston*, 415 U.S. 814; *United States v. Cook*, 384 U.S. 257 (1966))). Thus, the rule of lenity does not apply.

## II.

**[10]** Separately, O'Donnell argues that even if § 441f applies to straw donor contributions, the indictment against him is defective. "An indictment must be specific in its charges and necessary allegations cannot be left to inference . . . ." *Williams v. United States*, 265 F.2d 214, 218 (9th Cir. 1959). Moreover, "an indictment must do more than simply repeat the language of the criminal statute." *Russell v. United States*, 369 U.S. 749, 764 (1962). At the same time, an "indictment should be read in its entirety, construed according to common sense, and interpreted to include facts which are nec-

essarily implied." *United States v. Givens*, 767 F.2d 574, 584 (9th Cir. 1985). We review the sufficiency of an indictment de novo. *United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004).

[11] O'Donnell argues that the indictment is inadequate because it charges him with reimbursing contributions made by others rather than with making contributions himself. By characterizing the indictment in this manner, he seeks to illustrate a "variance between the charged conduct and the charged statute." It is true that the indictment includes allegations that O'Donnell reimbursed the contributions of others, which alone might not clearly state a legal violation. But the indictment also alleges that he "agreed to make conduit contributions . . . , that is, contributions in the names of others." Taken together, these allegations reasonably describe reimbursements as the particular method used to violate the ban on contributing in the names of others. The indictment is not defective.

## CONCLUSION

We hold that § 441f prohibits straw donor contributions, in which a defendant solicits others to donate to a candidate for federal office in their own names and furnishes the money for the gift either through an advance or a prearranged reimbursement. We further hold that the indictment against O'Donnell is sufficient. Accordingly, the district court's order dismissing counts one and two of the indictment is reversed, and the case is remanded.

**REVERSED and REMANDED.**