**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

F. HARVEY WHITTEMORE,
*Defendant-Appellant*.

No. 13-10515

D.C. No.
3:12-cr-00058-
LRH-WGC-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
October 6, 2014—San Francisco, California

Filed January 26, 2015

Before: Kim McLane Wardlaw, William A. Fletcher,
and Paul J. Watford, Circuit Judges.

Opinion by Judge W. Fletcher

## SUMMARY[*]

### Criminal Law

The panel affirmed convictions of making excessive campaign contributions in violation of 21 U.S.C. §§ 441a(a)(1) and 437g(d)(1)(A)(i), and making contributions in the name of another in violation of 2 U.S.C. §§ 441f and 437g(d)(1)(A)(i).

The panel held that the defendant's theory – that unconditional gifts under Nevada law cannot be conduit contributions in violation of federal law – is not supported by law, and that to the extent the defendant's theory is that the unconditional nature of the gifts prevented him from forming the necessary intent, the instructions given by the court adequately encompassed his theory.

The panel did not entertain the defendant's challenge to the district court's tentative ruling denying the defendant's motion *in limine* to exclude proffered testimony from a linguistics professor, where the defendant never renewed the motion. Regarding the defendant's contentions that the district court improperly allowed speculative testimony in violation of Fed. R. Evid. 602, the panel held that defense counsel had opened the door to some of the testimony, that some of the testimony was not impermissibly speculative, and that any error was harmless.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that there was sufficient evidence to support the conviction.

## COUNSEL

Justin James Bustos, Gordon & Silver, Reno, Nevada; Brian Warner Hagen, Whittemore Law Firm, Reno, Nevada; Dominic P. Gentile and Vincent Savarese, III (argued), Gordon & Silver, Las Vegas, Nevada, for Defendant-Appellant.

Elizabeth Olson White (argued), Appellate Chief and Assistant United States Attorney, Reno, Nevada; Steven Warren Myhre, First Assistant United States Attorney, Las Vegas, Nevada, for Plaintiff-Appellee.

## OPINION

W. FLETCHER, Circuit Judge:

In February 2007, F. Harvey Whittemore agreed to raise $150,000 for Senator Harry Reid's reelection campaign by March 31. A few days before the deadline, Whittemore distributed a total of $145,000, in increments of $5,000 per person, to some of his relatives and to employees of a company of which he was chairman, requesting that the recipients make contributions to Senator Reid's campaign. Each recipient made a contribution of $4,600, the maximum allowed under federal law. A jury convicted Whittemore of making excessive campaign contributions in violation of 2 U.S.C. §§ 441a(a)(1) and 437g(d)(1)(A)(i), and making contributions in the name of another in violation of 2 U.S.C.

§§ 441f and 437g(d)(1)(A)(i). (The relevant provisions of Title 2 of the U.S. Code have since been moved to Title 52 and renumbered.) Whittemore appeals, arguing that (1) the district court impermissibly failed to instruct the jury on the theory of his defense; (2) the individual contribution limits in the Federal Election Campaign Act ("FECA") and the Bipartisan Campaign Reform Act violate the First Amendment; (3) the district court made two erroneous evidentiary rulings; and (4) the conviction was based on insufficient evidence.

We affirm.

## I. Background

F. Harvey Whittemore is a prominent attorney, developer, and lobbyist who has long been active in Nevada politics and political fundraising. In early 2007, Whittemore was serving as Chairman of Wingfield Nevada Group, a holding company with significant interests in golf courses, land development, oil and gas properties, and dairy operations.

Whittemore had been a past supporter of Senator Harry Reid. In February 2007, after a meeting with Senator Reid, Whittemore promised to raise $150,000 for Senator Reid's 2010 reelection campaign before the upcoming March 31 campaign finance filing deadline. When the campaign had not received any funds from Whittemore by late March, Senator Reid's fundraiser twice followed up with Whittemore.

On March 27, 2007, the day of the second follow-up call, Whittemore transferred a total of $145,000 to seventeen relatives and employees through wire transfers and checks.

Those who were single received $5,000, while couples who were married or engaged received $10,000. Each recipient made a campaign contribution to Senator Reid's campaign of the statutory maximum contribution of $4,600, most within one day of receiving the money. Many of the recipients testified at trial that they would not or could not have made such large contributions absent the transfers from Whittemore. The recipients generally testified that Whittemore had characterized the funds as "bonuses" or "gifts" and that he simultaneously encouraged them to make contributions to Senator Reid's campaign, sometimes explicitly stating that the funds were intended to cover the cost of the contribution.

Whittemore's assistant, Roxanne Doyle, testified that on March 28 she sent contribution checks by FedEx to Jake Perry, Senator Reid's fundraiser, with a cover memo and a spreadsheet of donor information. The cover memo indicated that three of the checks listed on the spreadsheet had been sent to the campaign separately. The spreadsheet identified thirty-three donors, thirteen of whom were employees of Wingfield Nevada Group, including Whittemore. Whittemore was identified as the company's chairman. Two other donors were identified as employees of Red Hawk, a Wingfield subsidiary. Perry testified that the campaign received all of the checks except for one of the three that had been sent separately.

On April 13, two days before Senator Reid's campaign was to report its quarterly fundraising information to the Federal Election Commission, Whittemore sent Perry an e-mail with the subject heading "contribution list," along with a new spreadsheet that listed the same thirty-three donors. On this spreadsheet, however, only four of the donors were

listed as Wingfield employees. Several were now identified as employees of Wingfield subsidiaries whose names did not signal any relationship to Wingfield. Roxanne Doyle had previously been identified as "Executive Assistant, Wingfield Nevada Group." She was now identified as an employee of Harvey Whittemore Attorney at Law. Christina Mamer had been identified as "VP of Human Resources, Wingfield Nevada Group." She was now identified as an employee of Whittemore-Seeno Company; the prosecution introduced evidence that there is no company registered by that name in Nevada. Whittemore himself was now identified as "Partner, Lionel Sawyer & Collins."

Following a two-week trial, a jury convicted Whittemore of making excessive campaign contributions in violation of 2 U.S.C. §§ 441a(a)(1) and 437g(d)(1)(A)(i), making contributions in the name of another in violation of 2 U.S.C. §§ 441f and 437g(d)(1)(A)(i), and making a false statement to a federal agency in violation of 18 U.S.C. §§ 1001(a)(2) and 2. The jury could not reach a verdict on a second charge of making a false statement to a federal agency. The district court declared a mistrial on that count and granted the government's motion to dismiss without prejudice. The court granted Whittemore a downward variance from the guideline sentencing range of 41 to 51 months, sentencing him to 24 months in prison.

## II. Standard of Review

We review de novo whether jury instructions properly state the elements of the charged offense and adequately cover the defense's theory of the case. *United States v. Romm*, 455 F.3d 990, 1002 (9th Cir. 2006); *United States v. Stapleton*, 293 F.3d 1111, 1114 (9th Cir. 2002). We also

review constitutional claims de novo. *United States v. Chovan*, 735 F.3d 1127, 1131 (9th Cir. 2013).

We review evidentiary rulings for abuse of discretion and any underlying factual determinations for clear error. *United States v. Lukashov*, 694 F.3d 1107, 1114 (9th Cir. 2012). "Evidentiary rulings will be reversed for abuse of discretion only if such nonconstitutional error more likely than not affected the verdict." *United States v. Corona*, 34 F.3d 876, 882 (9th Cir. 1994).

"Where a defendant moves for acquittal at the close of the government's evidence, we review *de novo* whether sufficient evidence exists to support a guilty verdict." *United States v. Stewart*, 420 F.3d 1007, 1014 (9th Cir. 2005). A conviction is supported by sufficient evidence if, "viewing the evidence in the light most favorable to the government, a rational trier of fact could conclude that the evidence was adequate to prove guilt beyond a reasonable doubt." *United States v. Barbosa*, 906 F.2d 1366, 1368 (9th Cir. 1990).

## III. Discussion

Whittemore makes a number of arguments challenging his conviction. We address them in turn.

### A. Jury Instructions

Whittemore first argues that the district court erred in refusing to instruct the jury that an unconditional gift of funds cannot violate § 441f if the funds have become the property of the donors under Nevada law.

"A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." *United States v. Mason*, 902 F.2d 1434, 1438 (9th Cir. 1990), *overruled on other grounds by Dixon v. United States*, 548 U.S. 1 (2006), *as recognized by United States v. Doe*, 705 F.3d 1134 (9th Cir. 2013). "[B]ut it is not reversible error to reject a defendant's proposed instruction . . . if other instructions, in their entirety, adequately cover that defense theory." *Id.* In *United States v. Thomas*, 612 F.3d 1107, 1120 (9th Cir. 2010), we articulated a three-part test, requiring the defendant to show (1) that his theory has some foundation in evidence; (2) that it is supported by law; and (3) that the given instructions did not adequately encompass his theory.

Whittemore's theory that unconditional gifts under Nevada law cannot be conduit contributions in violation of federal law is not supported by law. Furthermore, to the extent Whittemore's theory is that the unconditional nature of the gifts prevented him from forming the necessary intent, the instructions given by the court adequately encompassed his theory.

## 1.  Unconditional Gifts

Section 441a imposes limits on individual campaign contributions made directly to candidates. *See* 52 U.S.C. § 30116(a)(1)(A) (formerly 2 U.S.C. § 441a(a)(1)(A)). In 2007, the inflation-adjusted limit for both primary and general election campaign contributions was $2,300, for a total base limit of $4,600 per person per candidate during a single election cycle. *See id.* § 30116(c)(1) (formerly 2 U.S.C. § 441a(c)(1)); 72 Fed. Reg. 5294, 5295 (Feb. 5, 2007). The statute defines a "contribution" as "any gift,

subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i) (formerly 2 U.S.C. § 431(8)(A)(i)). The limit includes "all contributions made by a person, either directly or indirectly, on behalf of a particular candidate, including contributions which are in any way earmarked or otherwise directed through an intermediary or conduit to such candidate." *Id.* § 30116(a)(8) (formerly 2 U.S.C. § 441a(a)(8)). Section 441f directly addresses so-called "conduit" or "straw donor" contributions. *See Goland v. United States*, 903 F.2d 1247, 1251 (9th Cir. 1990). It provides:

> No person shall make a contribution in the name of another person or knowingly permit his name to be used to effect such a contribution, and no person shall knowingly accept a contribution made by one person in the name of another person.

52 U.S.C. § 30122 (formerly 2 U.S.C. § 441f).

Whittemore argues that § 441f, on its face, does not prohibit "an unconditional gift made to a third party who subsequently decides to voluntarily contribute to a campaign," "even if that contribution is made pursuant to the suggestion of the giftor." Whittemore argues that because the money he transferred to his relatives and employees became "the giftees' own money" and because the transfers were not "conditioned upon the making of campaign contributions or otherwise, the giftees' subsequent campaign contributions could not trigger a violation of § 441f" as a matter of law. He further contends that this reading is mandated by the rule of lenity.

Whittemore's arguments are foreclosed by our decision in *United States v. O'Donnell*, 608 F.3d 546 (9th Cir. 2010). In *O'Donnell*, the defendant arranged to reimburse contributions made by thirteen employees and family members to the Edwards for President campaign. *Id.* at 548. On appeal, he argued that § 441f did not apply to "straw donor" contributions made from a conduit donor's funds that were later reimbursed, since the straw donor "actually made" the contribution. *Id.* at 549. We held that the statutory text and purpose precluded this reading. We first noted that the statutory definition of "contribution" did not address the identity of the donor who actually "makes" the contribution. *Id.* at 550. We then applied the dictionary definition of contribute—"'[t]o give or supply in common with others; give to a common fund or for a common purpose'"—to hold that "it is clear that O'Donnell gave the money at issue for the common purpose of advancing the Edwards campaign" and so made a "contribution" within the meaning of the statute. *Id.* (quoting AMERICAN HERITAGE COLLEGE DICTIONARY 303 (3d ed. 2000)) (alteration in original). We also specifically examined the statute's use of the word "gift." "In the context of gifts," we noted, "the word 'giving' connotes the idea of providing from one's own resources . . . , and thus we refer to the original source rather than the intermediary as the one who gave." *Id.* Accordingly, we held that

> the person who actually transmits the money acts merely as a mechanism, whereas it is the original source who has made the gift by arranging for his money to finance the donation. To identify the individual who has made the contribution, we must look past the intermediary's essentially ministerial role to the substance of the transaction. Accordingly,

the statutory language applies when a defendant's funds go to a campaign either directly from him or through an intermediary.

*Id.* We wrote that our interpretation of § 441f clearly furthered the congressional purpose of "ensur[ing] the complete and accurate disclosure of the contributors who finance federal elections," since straw donor contributions "undermine transparency no less than false name contributions do by shielding the identities of true contributors." *Id.* at 553–54.

Whittemore argues that *O'Donnell* does not control because the transferees here did not act as mere intermediaries. He argues that the legal difference between the intermediaries discussed in *O'Donnell* and the transferees here is equivalent to the difference between bailees and owners. He contends that because the court failed to instruct the jury regarding Nevada state property law, the jury was prevented from considering this legal difference.

We disagree. In *O'Donnell*, the contributions at issue were made with the straw donors' own funds, which were later reimbursed. The status of the donated funds under state property law, at the time of their donation, was irrelevant to a determination of who "made" the contribution for the purposes of § 441f. The key issue under § 441f is the *source* of the funds, regardless of the status of the funds under state property law at the time of the donation. *See id.* at 550. In this case, the jury instructions required the jury to find that Whittemore knew the named contributors were not in fact the "true source" of the money used for the contributions, and that Whittemore caused those contributions to be made. In light of these findings, each of Whittemore's transfers

constitutes a "contribution" under § 441f.   The jury's
conclusions that Whittemore made excessive campaign
contributions in violation of § 441a(a)(1) and caused a false
report to be made to the Federal Election Commission in
violation of 18 U.S.C. §§ 1001(a)(2) and 2 follow
accordingly.

## 2.  Intent

Whittemore also argues that the court's failure to instruct
the jury on his unconditional gift theory prevented the jury
from fully considering whether he had the intent to make an
illegal conduit contribution.  We hold that the instructions
were adequate.

Jury instructions must be legally accurate and must allow
the jury to consider any defense theory supported by law. *See
Mason*, 902 F.2d at 1441.  However, the defendant is not
entitled to the instructions of his choice.  Our recent decision
in *Thomas* is illustrative.   There, the district court gave a
model jury instruction in the defendant's perjury prosecution
that required the jury to find that the defendant's testimony
was false and that the defendant knew of its falsity. *Thomas*,
612 F.3d at 1122.  The defendant argued that the court erred
by failing to give an instruction based on her "literal truth"
defense—that her testimony could not be perjury if it were
literally true, even if it had "an especially strong tendency to
be misleading." *Id.* at 1119–20.  We held that the provided
instruction was adequate because it required findings that
would be incompatible with a finding that the same statement
was "literally true." *Id.* at 1121–22; *see also Romm*, 455 F.3d
at 1002 (holding that because the given instructions required
the same finding as the defendant's proffered instructions,

refusal to give defendant's instructions did not constitute error).

Here, the court read to the jury the text of §§ 441f and 437g(d)(1)(A) and recited the required elements of the offense. It also instructed the jury on conduit contributions, drawing from the statutory definition of "contribution" in § 431(8)(A)(i) and from our decision in *O'Donnell*. The instruction provided:

> Specifically, the law prohibits conduit contributions, which occur when a person provides anything of value, including a gift, subscription, loan, advance, deposit of money, or promise of reimbursement, to another person for the purpose of causing that other person to make a contribution in that other person's name. In other words, it is unlawful when a defendant solicits others to contribute to a candidate for federal office in their own names and furnishes the money for the contribution either through an advance or a prearranged reimbursement.

The court also instructed the jury that the defendant must have acted "knowingly and willfully," meaning that "the defendant is aware of the act and does not act through ignorance, mistake, or accident," and that "the defendant acted with knowledge that some part of his course of conduct was unlawful and with the intent to do something the law forbids."

Based on these instructions, the jury was permitted to conclude that Whittemore acted without the requisite intent

by giving funds to his donees without the purpose that these funds be used for improper campaign contributions, and, on that basis, to return a verdict of acquittal. *See O'Donnell*, 608 F.3d at 550. The district court thus did not err by excluding Whittemore's proffered instructions.

## B. Constitutional Claim

Whittemore also argues that the individual contribution limits of § 441a and the prohibition on conduit contributions in § 441f violate his free speech and association rights under the First Amendment. This argument is foreclosed by the Supreme Court's holding in *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), that contributions, as distinct from independent expenditures, may be limited.

In *Buckley*, the Court held that quid pro quo corruption and the "impact of the appearance of corruption stemming from public awareness of the opportunities for abuse inherent in a regime of large individual financial contributions" constituted "a constitutionally sufficient justification" for FECA's individual contribution limit. 424 U.S. at 26–27. Neither *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), nor *McCutcheon v. Federal Election Commission*, 134 S. Ct. 1434 (2014), overrules this holding of *Buckley*. In *Citizens United*, the Court concluded that 2 U.S.C. § 441b, prohibiting corporations from express advocacy in the election or defeat of federal candidates, violated the First Amendment. 558 U.S. at 337, 372. Rather than "eviscerate" *Buckley*, as Whittemore claims, the Court reinforced it, distinguishing between § 441b and the statute at issue in another case, *Federal Election Committee v. National Right to Work Committee*, 459 U.S. 197 (1982), which restricted corporations' ability to solicit PAC funds that

would be used to make direct contributions. The Court reasoned that *National Right to Work Committee* "involved contribution limits, which, unlike limits on independent expenditures, have been an accepted means to prevent *quid pro quo* corruption," and noted that Citizens United "ha[d] not made direct contributions to candidates, and it [had] not suggested that the Court should reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny." 558 U.S. at 359 (citation omitted). In *McCutcheon*, limits on contributions to individual campaigns were not at issue, and the Court explicitly declined to address them. *See* 134 S. Ct. at 1442, 1445. Rather, the Court struck down aggregate limits on individual contributions under 2 U.S.C. § 441a(a)(3). *Id.* at 1442.

## C. Evidentiary Rulings

Whittemore makes two arguments based on the district court's evidentiary rulings. First, he argues that the district court improperly excluded proffered testimony from Valerie Fridland, a linguistics professor who would have offered her opinion regarding potential interpretations of the text of § 441f. Second, he argues that the district court improperly allowed speculative testimony in violation of Federal Rule of Evidence 602.

### 1. Exclusion of Fridland's Testimony

In response to a pretrial motion *in limine*, the district court concluded that Fridland's proposed testimony was "likely inadmissible on two grounds." First, to the extent that Fridland would testify that Whittemore's alleged interpretation of § 441f was "reasonable," it was "excludable as a legal conclusion." Second, the testimony was unlikely to

assist the jury because, among other things, it "ha[d] nothing to do with Whittemore's actual beliefs"; it "resulte[d] from a process of reasoning familiar in everyday life," namely speaking standard American English; and testimony about "something [the jury] already knows" backed by "impressive credentials" could lead the jury to give Fridland's testimony undue weight.  The court denied the motion without prejudice, stating that evidence introduced during the trial could warrant reconsideration.

A ruling on a motion *in limine* is not a final order under 28 U.S.C. § 1291 because such rulings "are by their very nature preliminary."  *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1342 (9th Cir. 1985).  "Where a district court makes a tentative *in limine* ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial," which allows the court make a final ruling. *Adkins v. Mireles*, 526 F.3d 531, 542 (9th Cir. 2008) (internal quotation marks omitted).   Federal Rule of Evidence 103(b) provides, however, that a formal proffer of evidence at trial is not required if the court "rules definitively on the record" to exclude that evidence, either before or at trial.

The district court's ruling was tentative and without prejudice to Whittemore's renewing his motion.  The court specifically noted that it was possible that changed circumstances could "warrant reconsideration" of the court's initial ruling that Fridland's testimony was inadmissible. The court thus left Whittemore the opportunity to renew his motion, but he never did so.

## 2.  Speculative Testimony

Under Rule 602, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  FED. R. EVID. 602.  Rule 602 requires any witness to have sufficient memory of the events such that she is not forced to "fill[] the gaps in her memory with hearsay or speculation." 27 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE EVIDENCE § 6023 (2d ed. 2007).  Witnesses are not "permitted to speculate, guess, or voice suspicions."  *Id.* § 6026.  However, "[p]ersonal knowledge includes opinions and inferences grounded in observations and experience." *Great Am. Assurance Co. v. Liberty Surplus Ins. Co.*, 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009) (citing *United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999)).  Lay witnesses may testify about inferences pursuant to Rule 701:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

During Whittemore's trial, counsel for both the prosecution and the defense asked witnesses questions asking for various degrees of speculation.  Whittemore objects to the admission of testimony of various witnesses.  Roxanne Doyle, his assistant, testified that Whittemore had given her

a check for $10,000 and that upon Whittemore's request, she and her husband had used those funds to make maximum contributions to Senator Reid's campaign.  On cross-examination, defense counsel asked Doyle if she would have expected to be fired or disciplined had she not made the contribution.  Doyle responded that she would not expect to be fired, but she "would expect to be spoken to about it."  On redirect, the prosecutor followed up, asking what she "expected would have been said" if she had been "talked to" about not making a contribution.  Doyle responded that she would "expect to be asked, 'Why didn't you make the contribution?'"  The district court did not err in allowing Doyle to answer the prosecutor's question because defense counsel had opened the door during cross-examination.  But even if it had been error, it was harmless.  Doyle's response provided nothing that the jury could not have easily inferred from her answer to defense counsel's question.  The other testimony Whittemore identifies—Joshua Whellams's testimony that, given his personal and professional relationship with Whittemore, he would have made a contribution to Reid's campaign if Whittemore had asked him to do so, and Terry Reynolds's testimony that he thought he risked losing his job if he did not write a check to Reid's campaign—was not impermissibly speculative or was similarly harmless.

## D.  Sufficiency of the Evidence

Finally, Whittemore argues that the evidence presented at trial was insufficient to support his conviction.  We disagree.

Sufficient evidence for only six conduit contributions of $4,600 is required to sustain Whittemore's conviction for conduit contributions in excess of $25,000.  *See* 52 U.S.C.

§ 30109(d)(1)(A) (formerly 2 U.S.C. § 437g(d)(1)(A)).  The government presented evidence that Whittemore had promised to raise $150,000 for Senator Reid's campaign by March 31, 2007; evidence that the campaign contacted him to check on his progress on March 21 and on March 27; testimony from thirteen relatives and employees describing the transfer of funds on March 27 and March 28; copies of checks from Whittemore to the transferees and from the transferees to the campaign written within days of each other; and a new spreadsheet list of campaign donors that obscured the employment relationships between Wingfield Nevada Group and the donors.  This evidence was more than sufficient to support Whittemore's conviction.

**AFFIRMED.**