RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0084p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

> No. 14-3864

DIVNA MASLENJAK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cr-00126—Benita Y. Pearson, District Judge.

Argued: October 8, 2015

Decided and Filed: April 7, 2016

Before: GIBBONS and McKEAGUE Circuit Judges; ANDERSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Patrick Haney, KIRKLAND & ELLIS, LLP, Washington, D.C., for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Gregory L. Skidmore, Jeff D. Nye, KIRKLAND & ELLIS, LLP, Washington, D.C., for Appellant. Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

ANDERSON, D.J., delivered the opinion of the court in which GIBBONS and McKEAGUE, JJ., joined. GIBBONS, J. (pg. 27), delivered a separate concurring opinion.

_____

[*]The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

1

---

**OPINION**

---

S. THOMAS ANDERSON, District Judge.   Divna Maslenjak appeals her conviction for knowingly procuring her naturalization contrary to law in violation of 18 U.S.C. § 1425(a). Maslenjak, an ethnic Serb and native of Bosnia, came to the United States in 2000 as a refugee fleeing the civil war in the former Yugoslavia.  Maslenjak claimed she and her family feared persecution in Bosnia because her husband had evaded conscription into the Serbian army during the war.  In fact, Maslenjak's husband had not only been in the Serbian militia during the war but had served as an officer in a unit implicated in war crimes.  Maslenjak was granted refugee status and ultimately obtained her naturalization.   Based on her misrepresentations during the immigration process, a jury found Maslenjak guilty of knowingly procuring her naturalization contrary to law in violation of 18 U.S.C. § 1425(a) and of knowingly using an unlawfully issued certificate of naturalization in violation of 18 U.S.C. § 1423.

On appeal, Maslenjak argues that the district court improperly instructed the jury that her false statements need not be material in order to convict Maslenjak of procuring her naturalization contrary to law.  In the alternative, Maslenjak argues that the the district court erroneously instructed the jury that it could also convict Maslenjak if the jury found that she lacked good moral character.  We reject both arguments and **AFFIRM** the judgment of the district court**.**

**I.**

Maslenjak is a native of what is today the nation of Bosnia.  Although Maslenjak was born in a predominantly-Serbian village, Muslims made up the majority of the population in the surrounding region and clashed with ethnic Serbs like Maslenjak and her family.  Maslenjak briefly moved with her family from her home village in Bosnia to the Serbian city of Belgrade in 1992 and then returned to Bosnia soon thereafter.  As the break-up of the former Yugoslavia accelerated in the 1990s and conditions in Bosnia deteriorated, the United States dispatched immigration officials to Belgrade to assist refugees fleeing Bosnia and the ethnic cleansing

taking place there during the war. In April 1998, Maslenjak and her family met with Monia Rahmeyer, an officer with the United States Immigration and Naturalization Service in Belgrade, to seek refugee status based on their fear of persecution in their home region of Bosnia. The interview was conducted with a translator.

No writing or recording of the interview exists to show what questions Rahmeyer asked Maslenjak or what responses Maslenjak provided to the questions. The proof at trial showed that Maslenjak acted as the primary applicant on her family's asylum application. Maslenjak stated under oath during the interview that her family feared persecution back in Bosnia owing to the fact that her husband did not serve in the military during the war. Maslenjak explained that when she returned to Bosnia with her children in 1992, her husband remained in Jagodina, Serbia, to avoid conscription into the Bosnian Serb army during the Bosnian civil war. According to Maslenjak, she and her husband had lived apart from 1992 to 1997. Based on these representations, Maslenjak and her family were granted refugee status in 1999 and immigrated to the United States in September 2000 where they settled in Ohio. Maslenjak subsequently obtained lawful permanent resident status in 2004.

On December 5, 2006, special agents of Immigration and Customs Enforcement questioned Maslenjak's husband, Ratko Maslenjak, at the family home as part of an investigation into whether Mr. Maslenjak had failed to disclose his military service in Serbia in his immigration application. Divna Maslenjak was present in the home during the interview. Ratko Maslenjask was subsequently charged with two counts of making a false statement on a government document in violation of 18 U.S.C. § 1546(a). Specifically, Ratko Maslenjak was accused of failing to report his military service in the Bratunac Brigade of the Army of the Republic Srpska (also known as the VRS), a unit that participated in the genocide of 7,000 to 8,000 Bosnian Muslims in 1995. The government alleged that according to military records, Ratko Maslenjak served as an officer in the Bratunac Bridgade at the time of the genocide, though there was no evidence Mr. Maslenjak had personally participated in war crimes. Ratko Maslenjak was arrested on the charges on December 13, 2006.

One week after her husband's arrest, Maslenjak filed an N-400 Application for Naturalization on December 20, 2006. One of the questions on the application asked whether

she had ever "knowingly given false or misleading information to any U.S. government official while applying for any immigration benefit or to avoid deportation, exclusion, or removal." A separate question asked whether Maslenjak had ever "lied to any U.S. government official to gain entry or admission into the United States." Maslenjak answered "no" to both questions on her written application. Maslenjak was also interviewed under oath about the written answers on her application and declined to make any changes to the answers when given the opportunity to do so. On August 3, 2007, Maslenjak was naturalized as a citizen of the United States.

On October 7, 2007, Ratko Maslenjak was found guilty in the United States District Court for the Northern District of Ohio on both counts of making false statements on a government document under 18 U.S.C. § 1546(a). The district court sentenced Mr. Maslenjak to 24 months probation on January 8, 2008. Because his criminal conviction made him subject to removal, Ratko Maslenjak was taken into ICE custody on January 13, 2009. In order to avoid removal, Ratko Maslenjak filed a petition for asylum. Divna Maslenjak filed an I-130 Petition for Alien Relative and testified on her husband's behalf at his April 28, 2009, asylum hearing. During her testimony Maslenjak admitted that her husband had served in the Republic Srpska military, that they had in fact lived together in Bosnia after 1992, and that she had lied to the immigration officer about these facts during the refugee application interview in 1998.

On March 5, 2013, a federal grand jury indicted Maslenjak with one count of knowingly procuring her naturalization contrary to law in violation of 18 U.S.C. § 1425(a). The indictment alleged that Maslenjak "made material false statements" on her Form N-400 Application for Naturalization by answering "no" to the questions about "knowingly giv[ing] false or misleading information to any U.S. government official while applying for any immigration benefit" and "[lying] to any U.S. government official to gain entry or admission into the United States" and then giving the same false answers during her interview for naturalization. The second count of the indictment charged Maslenjak with knowingly misusing her unlawfully issued certificate of naturalization to file a Form I-130 Petition for Alien Relative on February 6, 2009, to obtain lawful permanent resident status for her husband, in violation of 18 U.S.C. § 1423. On April 17, 2014, a jury found Maslenjak guilty of both charges. Upon her conviction, the district court sentenced Maslenjak to two years' probation and granted the government's motion to have

Maslenjak's naturalization revoked under 8 U.S.C. § 1451(e). Maslenjak's timely appeal followed.

**II.**

This court reviews challenges to jury instructions for abuse of discretion. *United States v. Richardson*, 793 F.3d 612, 629 (6th Cir. 2015). A district court enjoys broad discretion "in crafting jury instructions and does not abuse its discretion unless the jury charge fails accurately to reflect the law." *United States v. Ross,* 502 F.3d 521, 527 (6th Cir. 2007). "When jury instructions are claimed to be erroneous, we review the instructions as a whole, in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision." *United States v. Kuehne,* 547 F.3d 667, 679 (6th Cir. 2008) (internal quotation marks and citation omitted). An improper jury instruction requires reversal "only where the instructions, when viewed as a whole, are found to be confusing, misleading, or prejudicial." *Richardson*, 793 F.3d at 629 (citation omitted).

**A.**

The first issue presented is whether 18 U.S.C. § 1425(a) contains an implied materiality requirement where a naturalized citizen like Maslenjak faces mandatory denaturalization following a conviction under § 1425(a). The issue is one of first impression in this Circuit.[1] Based on the plain language of the statute as well as the overall statutory scheme for denaturalization, we hold that proof of a material false statement is not required to sustain a conviction under 18 U.S.C. § 1425(a).

"The starting point for any question of statutory interpretation is the language of the statute itself." *United States v. Coss*, 677 F.3d 278, 283 (6th Cir. 2012) (internal quotation marks and citation omitted). Section 1425(a) makes it a crime to "knowingly procure[] or attempt[] to

---

[1]The district court concluded that proof of materiality was not required based on its reading of our unreported decision in *United States v. Tongo*. But we have never squarely addressed the question of whether materiality is an element of the offense under 18 U.S.C. § 1425(a). *United States v. Shordja*, 598 F. App'x 351, 354 (6th Cir. 2015) (noting that this Circuit had not answered the question); *United States v. Tongo*, 16 F.3d 1223, 1994 WL 33967, at **3–4 (6th Cir. Feb. 7, 1994) (refusing to read a materiality requirement into 18 U.S.C. § 1015(a) but apparently holding that there was sufficient evidence of materiality to sustain a conviction under 18 U.S.C. § 1425(a)).

procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." 18 U.S.C. § 1425(a). A plain reading of the statute suggests that materiality is not an element of the offense. "The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Dixon v. United States*, 548 U.S. 1, 7 (2006) (quoting *Liparota v. United States,* 471 U.S. 419, 424 (1985)). Accordingly, courts "ordinarily resist reading words or elements into a statute that do not appear on its face." *Dean v. United States*, 556 U.S. 568, 572 (2009). Obviously, the term "material" is found nowhere in § 1425(a). Without statutory support for an element of materiality, we are hard-pressed to conclude that materiality is an element of the offense under 18 U.S.C. § 1425(a).

As a matter of statutory interpretation, the absence of the term would normally end our inquiry. Maslenjak apparently concedes as much and instead argues on appeal that materiality is implied as an element of 18 U.S.C. § 1425(a). Maslenjak relies on a line of cases where other circuits have held that proof of materiality was required to denaturalize a citizen based on a violation of 18 U.S.C. § 1425(a). The Immigration and Naturalization Act ("INA") sets forth at 8 U.S.C. § 1451 two alternative procedures for denaturalization, one civil and one criminal. The civil procedure under 8 U.S.C. § 1451(a) provides for denaturalization where one procures citizenship by concealing a material fact and expressly requires proof of materiality. The criminal procedure under 8 U.S.C. § 1451(e) makes denaturalization an automatic consequence of a criminal conviction under 18 U.S.C. § 1425. The cases Maslenjak cites for support have assumed that the required element of materiality applicable to civil denaturalization proceedings under § 1451(a) should also apply to a criminal denaturalization under § 1451(e), and by extension, a prosecution under 18 U.S.C. § 1425(a).

For the reasons more fully discussed below, we find this line of cases unpersuasive. Reading an implied element of materiality into 18 U.S.C. § 1425(a) is inconsistent with other laws criminalizing false statements in immigration proceedings and regulating the naturalization process. As Maslenjak's case illustrates, 18 U.S.C. § 1425 is but one statute within a broader statutory framework governing denaturalization. Here the district court denaturalized Maslenjak under 8 U.S.C. § 1451(e) after she was convicted of violating 18 U.S.C. § 1425(a). And her

conviction under § 1425(a) required proof that Maslenjak had obtained her naturalization "contrary to law," meaning the government had to prove that her conduct violated at least one other law applicable to naturalization. At trial the government argued that Maslenjak's conduct violated at least two other laws, a criminal statute, 18 U.S.C. § 1015(a), as well as the INA's prerequisites for naturalization, 8 U.S.C. § 1427(a)(3), and its definitional statute, 8 U.S.C. § 1101(f)(6). In other words, the district court denaturalized Maslenjak under one statute but only after the jury had found her guilty of a crime under a second statute, which required as of one its elements proof that Maslenjak's act was "contrary to" at least a third statute. We find an implied element of materiality in 18 U.S.C. § 1425(a) to be at odds with the other statutes at issue in Maslenjak's case.

Furthermore, the cases on which Maslenjak relies overlook the fact that Congress has created a two-track system for denaturalization. Denaturalization under § 1451(a) is a civil proceeding with its own evidentiary standard and shifting burden of proof; whereas, denaturalization under § 1451(e) is a mandatory ministerial act following a criminal conviction under 18 U.S.C. § 1425(a). There is little justification for reading an implied element of materiality into 18 U.S.C. § 1425 based on the fact that materiality is a required element for civil denaturalization under 8 U.S.C. § 1451(a). We turn now to examine in more depth each of the statutes applicable to Maslenjak's conviction under 18 U.S.C. § 1425(a) and denaturalization under 8 U.S.C. § 1451(e), starting with the INA itself and the denaturalization statute found at 8 U.S.C. § 1451.

**B.**

The INA creates what are essentially two alternative paths for denaturalization. Section 1451(a) provides for the revocation or setting aside of a citizen's naturalization where "the order and certificate of naturalization" were "illegally procured or [were] procured by concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a); *Kungys v. United States*, 485 U.S. 759, 772–73 (1988). The INA at § 1451(a) expressly requires proof that the citizen procured his naturalization by concealing a "material" fact; the term "material" appears on the face of the statute. The Supreme Court in *Kungys* concluded that materiality is a required

element of the government's case in a denaturalization proceeding under § 1451(a). *Kungys*, 485 U.S. at 767–68.**2**

Under § 1451(a), the government institutes a denaturalization proceeding by filing a petition and "affidavit showing good cause" in the district where the naturalized citizen resides. 8 U.S.C. § 1451(a). The naturalized citizen then has 60 days in which to file an answer. § 1451(b). The government has the initial burden to adduce "clear, unequivocal, and convincing" proof that the naturalized citizen has procured his naturalization by one of the improper means listed in § 1451(a), including the concealment of a material fact. *Fedorenko v. United States*, 449 U.S. 490, 505 (1981). "Any less exacting standard would be inconsistent with the importance of the right that is at stake in a denaturalization proceeding." *Id.* at 505–06. Once the government has carried its burden and proven the naturalized citizen improperly procured his naturalization, a "presumption of ineligibility" arises, "which the naturalized citizen is then called upon to rebut." *United States v. Puerta*, 982 F.2d 1297, 1303–04 (9th Cir. 1992) (quoting *Kungys*, 485 U.S. at 783–84 (Brennan, J., concurring)).

The burden-shifting of § 1451(a)'s denaturalization procedure underscores the fact that "[a] denaturalization suit is not a criminal proceeding," *Schneiderman v. United States*, 320 U.S. 118, 160 (1943), but a "civil case." *Addington v. Texas,* 441 U.S. 418, 424 (1979). The Supreme Court has described denaturalization under § 1451(a) as "a suit in equity." *Fedorenko*, 449 U.S. at 516 (1981) (citations omitted). Rather than being a penal sanction, denaturalization "imposes no punishment upon an alien who has previously procured a certificate of citizenship by fraud or other illegal conduct. It simply deprives him of his ill-gotten privileges." *Johannessen v. United States*, 225 U.S. 227, 242 (1912). In contrasting a civil denaturalization proceeding under § 1451(a) with a typical criminal proceeding, the Sixth Circuit has remarked "[c]riminal cases offer many due process protections--e.g., jury trial, indictment, beyond-a-reasonable-doubt burden of proof, right to counsel--that civil proceedings, including

---

**2**The Supreme Court's holding in *Kungys* about the definition of materiality and the question of whether the government's proof against Maslenjak satisfied the *Kungys* standard are not relevant to our decision because we hold that the government did not have to prove a material false statement in order to get a conviction under 18 U.S.C. § 1425(a).

denaturalization proceedings, do not." *United States v. Mandycz*, 447 F.3d 951, 962 (6th Cir. 2006).

The denaturalization statute at § 1451(e) goes on to establish a second, alternative path to denaturalization. That paragraph states that "[w]hen a person shall be convicted under [18 U.S.C. § 1425] of knowingly procuring naturalization in violation of law, the court in which such conviction is had shall thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certificate of naturalization of such person to be canceled." 8 U.S.C. § 1451(e). A criminal conviction under 18 U.S.C. § 1425 results in the mandatory denaturalization of the citizen, and the district court's task in this respect becomes purely "ministerial." *United States v. Inocencio*, 328 F.3d 1207, 1209 (9th Cir. 2003); *United States v. Maduno*, 40 F.3d 1212, 1217–18 (11th Cir. 1994); *United States v. Djanson*, 578 F. App'x 238, 241 (4th Cir. 2014). In other words, a district court lacks any discretion in the matter, and no further process is due once the naturalized citizen is convicted of knowingly procuring his naturalization "contrary to law." And as in any criminal prosecution, the government has the burden to establish the elements of the offense beyond a reasonable doubt, and the accused has the right to all of the constitutional due process he would otherwise not receive as part of a civil denaturalization proceeding under § 1451(a), including the right not to testify or put on proof at all. *See Carter v. Kentucky*, 450 U.S. 288, 295–300 (1981). As already mentioned, it is this scenario that is at issue in Maslenjak's appeal.

Even though the district court denaturalized Maslenjak pursuant to 8 U.S.C. § 1451(e), Maslenjak does not argue that 8 U.S.C. § 1451(e) contains an implied element of materiality, perhaps with good reason. Unlike paragraph (a), paragraph (e) of 8 U.S.C. § 1451 never mentions "materiality," and this omission of the term strongly suggests that no showing of materiality is required for denaturalization under § 1451(e). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29-30 (1997) (other citations omitted). As is clear from the statutory text, 8 U.S.C. § 1451(e) simply cross-references 18 U.S.C. § 1425 and makes denaturalization an automatic consequence of the criminal conviction. Maslenjak's

argument then is that materiality is an implied element of the offense under 18 U.S.C. § 1425(a), which now brings us to the elements of that statute.

## C.

As previously noted, 18 U.S.C. § 1425(a) makes it a crime to "knowingly procure[] or attempt[] to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship." 18 U.S.C. § 1425(a). We pause to note that the expansive language of the statute captures much more than making false statements. Paragraph (a) makes it illegal not only to procure or obtain naturalization but also any "documentary or other proof of naturalization or citizenship." Moreover, the statute criminalizes not just procuring these things only for one's self but for "any person." So a naturalized citizen might violate § 1425(a), for example, by improperly obtaining a forged naturalization certificate for a family member. The naturalized citizen's conduct of helping another person fraudulently procure forged citizenship papers violates § 1425(a), thereby making the naturalized citizen subject to mandatory denaturalization under 8 U.S.C. § 1451(e). The point is 18 U.S.C. § 1425(a) criminalizes far more than just the conduct of which Maslenjak was convicted, making a false statement on an application for naturalization.

In order to prove the offense in this case, the government had to establish that (1) Maslenjak procured her naturalization; (2) that she procured it in some manner contrary to law; and (3) that she did so knowingly. It is undisputed in this appeal that the district court correctly instructed the jury on the first and last elements. The real dispute concerns the district court's definition of "contrary to law" in its instructions to the jury and in particular its instruction that a false statement need not be material in order for the statement to be "contrary to law."

The district court explained to the jury that making a false statement under oath in an immigration proceeding was "contrary to law" and violated 18 U.S.C. § 1425(a) if the act of making a false statement violated the immigration laws, regardless of whether the statement was material. The district court specified that "[o]ne of the laws which governs naturalization prohibits an applicant from knowingly making any false statement under oath, relating to

naturalization." The district court's instruction in this regard clearly tracked the language of 18 U.S.C. § 1015(a), which makes it a crime to make "any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registration of aliens." 18 U.S.C. § 1015(a).

We hold that the district court's instruction on the "contrary to law" element was a correct statement of the law. First, 18 U.S.C. § 1425(a)'s "contrary to law" element is broad enough to cover the predicate violation of law at issue, namely, making false statements in an immigration proceeding in violation of 18 U.S.C. § 1015(a). We construe the phrase "contrary to law" to mean "contrary to all laws applicable to naturalization." The Supreme Court has emphasized the importance of strict compliance with the laws and requirements for naturalization.

> An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon terms and conditions specified by Congress. No alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it . . . and demand its cancellation unless issued in accordance with such requirements."

*Fedorenko*, 449 U.S. at 506 (quoting *United States v. Ginsberg*, 243 U.S. 472, 474–475 (1917)). The INA spells out these requirements. It follows then that the failure to comply with the INA's requirements for naturalization would be "contrary to law."

We have also affirmed convictions under § 1425(a) where the predicate or underlying violation of law was another criminal offense, and not just a failure to comply with the INA. *United States v. Damrah*, 412 F.3d 618, 622–23 (6th Cir. 2005) (Gibbons, J.) (affirming conviction under § 1425(a) & (b) for underlying violations of 18 U.S.C. §§ 1001, 1015(a)). Other circuits have likewise affirmed convictions under § 1425(a) for underlying criminal conduct. *United States v. Munyenyezi*, 781 F.3d 532, 536 (1st Cir.), *cert. denied*, No. 15-5264, 2015 WL 4456739 (Oct. 5, 2015) (affirming conviction under § 1425(a) for underlying violation of 18 U.S.C. § 1001(a)); *United States v. Mensah*, 737 F.3d 789, 803 (1st Cir. 2013) (affirming conviction under § 1425(a) for underlying violation of 18 U.S.C. § 1015(a)); *accord United States v. Alameh*, 341 F.3d 167, 171–72 (2d Cir. 2003) (affirming conviction under § 1425(b) for

underlying violation of 18 U.S.C. § 1546(a)).[3]  The phrase "contrary to law" is broad enough to include not only violations of the INA's administrative requirements for naturalization but also any criminal offense against the United States pertaining to naturalization, including making false statements.

The Ninth Circuit in *United States v. Puerta* seemed to read § 1425(a)'s "contrary to law" element to mean "contrary to the INA," and only the INA.  The *Puerta* court stated "Congress has addressed the impact of immaterial false testimony *only* in the 'good moral character' provision in 8 U.S.C. § 1101(f)(6)."  *Puerta*, 982 F.2d at 1302 (emphasis added).  In point of fact, Congress has addressed the impact of immaterial false testimony in Title 18 and made it a criminal offense to make "any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registration of aliens."  18 U.S.C. § 1015(a).  The Ninth Circuit apparently understood "contrary to law" to mean only "contrary to the INA."  But if § 1425(a) reached only violations of the INA and its administrative prerequisites for citizenship, then § 1425(a)'s "contrary to law" element would actually mean "contrary to the INA but not 18 U.S.C. § 1015(a) or any other federal law criminalizing specific conduct in an immigration proceeding."  We find no principled reason to construe the phrase in this limited way.[4]  The most reasoned construction of § 1425(a)'s "contrary to law" element is simply "contrary to all laws applicable to naturalization," and not just the INA.

---

[3]The Board of Immigration Appeals has construed 18 U.S.C. § 1425(a)'s contrary to law element to include violations of both 18 U.S.C. § 1001 (the federal perjury statute) and § 1015(a). *Amouzadeh v. Winfrey*, 467 F.3d 451, 457–58 (5th Cir. 2006).

[4]It is true that the phrase "contrary to law" appears in only a handful of federal criminal statutes besides 18 U.S.C. § 1425(a).  *See* 18 U.S.C. § 545 (smuggling goods into the United States "contrary to law"); 18 U.S.C. § 1693 (mishandling mail "contrary to law"); 18 U.S.C. § 1697 (transport of persons acting as private express who themselves transport letters "contrary to law").  As such, the case law construing the phrase "contrary to law," as Title 18 uses it, is somewhat scarce.  Nevertheless, our construction of the federal smuggling statute, 18 U.S.C. § 545, and its "contrary to law" element further supports the notion that "contrary to law" should be read broadly to include criminal offenses against the laws of the United States.  In *United States v. Teh*, the defendant was charged with smuggling bootleg films into the country "contrary to law" in violation of § 545.  *United States v. Teh*, 535 F.3d 511 (6th Cir. 2008) (Gibbons, J.).  We concluded that "contrary to law" under § 545 could include violations of 18 U.S.C. § 2318, which makes it a crime to traffic in counterfeit labels or packaging for motion pictures.  *Id.* at 517–19.  The case illustrates the principle that "contrary to law" should be understood to include "contrary to" federal criminal statutes, not just procedural and administrative requirements.

Second, the district court's instruction was an accurate statement of law because proof of materiality is not required to establish a violation of 18 U.S.C. § 1425(a) or the underlying violation of 18 U.S.C. § 1015(a).  Having determined that § 1425(a) on its face does not require proof of materiality, we next look to Maslenjak's underlying conduct by which she procured her naturalization "contrary to law," making false statements in her immigration proceedings.  Title 18 U.S.C. § 1015(a) criminalizes "any false statement under oath . . ." in an immigration proceeding.  18 U.S.C. § 1015(a).  We have construed § 1015(a) in a previous unreported decision and concluded that materiality is not an element of the offense. *Tongo*, 16 F.3d 1223, 1994 WL 33967, at **3–4.  Every other circuit to consider the question has reached the same result and held that materiality is not an element of § 1015(a).  *United States v. Youssef*, 547 F.3d 1090, 1094 (9th Cir. 2008); *United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003); Seventh Cir. Pattern Jury Instr. for 18 U.S.C. § 1015(a).  The Ninth Circuit reasoned that § 1015(a) does not contain a materiality requirement based on "Congress's omission of 'material' from § 1015(a), combined with its inclusion of 'material' in a similar statutory provision (§ 1001(a)) . . . ." *Youssef*, 547 F.3d at 1094.[5]  Therefore, § 1015(a) does not require proof of a false statement of material fact.

It follows that where as here the government satisfies the "contrary to law" element of § 1425(a) by proving an underlying violation of law and the underlying violation does not have as one of its elements a material false statement, no additional proof of materiality is required to obtain a conviction under § 1425(a).  Otherwise, requiring proof of materiality simply as an element of § 1425(a) would lead to incongruous legal outcomes.  For example, a person could violate 18 U.S.C. § 1015(a) by making "any [immaterial] false statement" on an application for naturalization but not be guilty of procuring his naturalization "contrary to law" in violation of 18 U.S.C. § 1425(a), unless the government could also show that the false statement was material.  This result also alters the plain meaning of "contrary to law" to "contrary to the laws applicable to naturalization except 18 U.S.C. § 1015(a)."  We find no warrant for such a cramped reading of the phrase "contrary to law."

---

[5]When asked at oral argument if any other federal statute criminalized immaterial false states, the United States inexplicably answered that there were none.  Not only does 18 U.S.C. § 1015(a) criminalize immaterial false statements, the statute criminalizes immaterial false statements in immigration proceedings, and the district court's instructions to the jury on the "contrary to law" element closely tracked the language of § 1015(a).

Of course, the predicate act or conduct matters in a prosecution under § 1425(a). Where the government establishes the "contrary to law" element of § 1425(a) by proving an underlying criminal act and the criminal act has as one of its elements a material false statement, proof of materiality should arguably be required to obtain a conviction under § 1425(a). Our recent case of *United States v. Shordja*, 598 F. App'x 351 (6th Cir. 2015) illustrates this proposition. Like Maslenjak, the defendant in *Shordja* was charged with procuring his naturalization in violation of 18 U.S.C. § 1425(a). The defendant provided the same false answers to the same questions on the same application for naturalization. *Shordja*, 598 F. App'x at 351–52. But the government in *Shordja* conceded that proof of materiality was a required element of the offense under § 1425(a), a position seemingly inconsistent with its stance in this appeal. *Id.* at 354 ("Although we have not yet addressed the question of whether to recognize a materiality requirement in § 1425(a), the Government concedes that the statutory provision contains a materiality element.").[6]

However, unlike Maslenjak, the defendant in *Shordja* was also charged with one count of making false statements to a government official in violation of 18 U.S.C. § 1001(a)(2). *See also Latchin*, 554 F.3d at 712. In other words, the government's theory of the case was that the defendant procured his naturalization "contrary to law" by violating the federal perjury statute, which has as one of its elements proof of materiality. 18 U.S.C. § 1001(a)(2) ("[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation . . . shall be [punished]."); *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999) ("The elements required to establish a violation of 18 U.S.C. § 1001 are . . . . that the false statement was material."). Where as in *Shorjda* a defendant is charged under 18 U.S.C. § 1425(a) with knowingly procuring naturalization contrary to law and the predicate violation of law is perjury under § 1001(a), it stands to reason that proof of materiality should be required to prove that the defendant procured his naturalization "contrary to law."

---

[6]Without deciding whether materiality was an element of 18 U.S.C. § 1425(a), we held that it was not plain error for the district court to fail to instruct the jury on materiality and that there was sufficient evidence of materiality to sustain the conviction. *Shordja*, 598 F. App'x at 354-55.

We need not fully resolve this last point to decide this case.  Maslenjak was not charged under the perjury statute, and the district court did not instruct the jury on the elements of § 1001(a).  The theory of the government's case against Maslenjak was that she procured her naturalization "contrary to law," in part by making false statements in an immigration proceeding in violation of 18 U.S.C. § 1015(a), not by committing perjury in violation of § 1001(a).  A material false statement is not an element of the crime under § 1015(a).  Therefore, we conclude that materiality is not an implied element of 18 U.S.C. § 1425(a) where the underlying "contrary to the law" conduct is making a false statement in violation of 18 U.S.C. § 1015(a).

We recognize that Maslenjak's position finds support in a number of other circuit decisions holding that materiality is an implied element of 18 U.S.C. § 1425(a).  By and large, we find these decisions unpersuasive.  The leading case supporting Maslenjak's position is *United States v. Puerta* where the Ninth Circuit read an implied materiality requirement into § 1425(a).  *Puerta*, 982 F.2d at 1301.  The defendant in *Puerta* made false statements on his application for naturalization where he did not answer a question about whether he had ever used an alias (he had) and answered that he had not been absent from the United States since he entered the country for permanent residence (he was).  *Id.* at 1298–99.  The defendant was charged under 18 U.S.C. § 1425(a), and following a bench trial, the district court found him guilty of procuring his naturalization contrary to law and proceeded to denaturalize him pursuant to 8 U.S.C. § 1451(e).  *Id.* at 1299–1300.

The Ninth Circuit reversed, holding that the government had to prove that the defendant's statements were material.  The *Puerta* court based its holding on two factors: (1) proof of materiality was required in a civil denaturalization proceeding under 8 U.S.C. § 1451(a); and (2) the "gravity of the consequences" of mandatory denaturalization justified a showing of materiality under 18 U.S.C. § 1425(a).  *Id.* at 1301 (citation omitted).  Notably, the parties in *Puerta* agreed that the materiality requirement in the civil denaturalization proceeding implied materiality as an element of 18 U.S.C. § 1425(a) as well. *Id.*[7]  As a result, the Ninth Circuit did not apply the typical rules of statutory construction.  The Ninth Circuit ultimately concluded that

---

[7]As *Puerta* illustrates, the government has taken inconsistent positions on the materiality issue in different cases before different courts at different times.  We address this issue more fully below.

"Puerta's false statements were not material, and therefore may not form the basis of a criminal conviction under § 1425." *Id.* at 1304.

Other circuits have followed the Ninth Circuit's decision in *Puerta* but without engaging in their own analysis of the statutory language. The First Circuit has assumed like the Ninth Circuit that materiality is an element of 18 U.S.C. § 1425(a) because it is an element of civil denaturalization under 8 U.S.C. § 1451(a). *Mensah*, 737 F.3d at 808–09; *Munyenyezi*, 781 F.3d at 536. The Seventh Circuit adopted the materiality element, at least in part, because, just as in *Puerta*, the parties to the case agreed that it was an element of 18 U.S.C. § 1425(a). *United States v. Latchin*, 554 F.3d 709, 712, 713 n.3 (7th Cir. 2009).[8] And the Fourth Circuit has simply followed *Puerta* without any supporting reasoning of its own. *United States v. Aladekoba*, 61 F. App'x 27, 28 (4th Cir. 2003); *United States v. Agyemang,* 230 F.3d 1354, 2000 WL 1335286, *1 (4th Cir. Sept. 15, 2000); *United States v. Agunbiade*, 172 F.3d 864, 1999 WL 26937, at *2 (4th Cir. Jan. 25, 1999).

We find that *Puerta*'s approach to materiality suffers from a number of problems. First and foremost, as a matter of statutory construction, 18 U.S.C. § 1425(a) does not suggest that materiality is an element of the offense. The term "material" does not appear in 18 U.S.C. § 1425(a) nor, for that matter, in 8 U.S.C. § 1451(e). This is not surprising because § 1425(a) criminalizes procuring citizenship or naturalization in any way that is "contrary to law," not just by making false statements. In fact, 18 U.S.C. § 1425(a) reaches far more conduct than making false statements or even procuring one's own citizenship in some way contrary to law. The statute can be properly read to criminalize the procurement of any proof of citizenship or document related to naturalization or citizenship for "any person," not just one's own self. The Ninth Circuit's conclusion that § 1425(a) contains an implied element of materiality then lacks any support in what is already the broad and plain language of the statute.

The Ninth Circuit's approach also ignores the fact that other violations of federal law pertaining to false statements in immigration proceedings do not require proof of materiality.

---

[8]The Seventh Circuit also analyzed the false statements at issue in *Latchin* as violations of 18 U.S.C. § 1001(a), the federal perjury statute. *Latchin*, 554 F.3d at 712. For the reasons already explained above, the distinction is important because 18 U.S.C. § 1001(a) expressly requires proof of materiality as an element of the offense. *See* 18 U.S.C. § 1001(a).

It is well settled in the Ninth Circuit (and in other circuits following the Ninth's holding in *Puerta*) that proof of materiality is not a required element of 18 U.S.C. § 1015(a). *Youssef,* 547 F.3d at 1094; *see also Abuagla*, 336 F.3d at 278; Seventh Cir. Pattern Jury Instr. for 18 U.S.C. § 1015(a). Nor is proof of materiality required in other sections of the INA addressing false testimony. The INA at 8 U.S.C. § 1427(a)(3) makes "good moral character" a condition precedent to naturalization. 8 U.S.C. § 1427(a)(3). And 8 U.S.C. § 1101(f)(6) precludes a finding of "good moral character" for any naturalization applicant who "has given false testimony for the purpose of obtaining any benefit" under the INA. 8 U.S.C. § 1101(f)(6).[9] The Supreme Court in *Kungys* concluded that § 1101(f)(6) does not contain a materiality requirement. *Kungys,* 485 U.S. at 779–80 (holding that 8 U.S.C. § 1101(f)(6) does not contain a materiality requirement for false testimony). Reading an implied materiality element into § 1425(a) would mean then that a defendant could give immaterial false testimony for the purpose of obtaining an immigration benefit, thereby failing to meet the requirements for naturalization under 8 U.S.C. § 1427(a)(3) and 8 U.S.C. § 1101(f)(6) but still not be guilty of knowingly procuring his citizenship "contrary to law" in violation of 18 U.S.C. § 1425(a). Requiring proof of materiality under 18 U.S.C. § 1425(a) is incompatible with these other federal laws applicable to false statements in immigration proceedings.

As *Puerta* and its progeny highlight, the United States has taken a contrary position on the materiality issue in different cases before different courts, including this one, though we have noted why *Shordja* is distinguishable in this regard. While the government could not account for these inconsistencies at oral argument, "[t]here is, of course, no rule of law to the effect that the Government must be consistent in its stance in litigation over the years." *Barrett v. United States*, 423 U.S. 212, 222 n.6 (1976) (citation omitted); *see also* 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3530 (3d ed.) ("Just as courts are not

---

[9]The district court also instructed the jury that it could find Maslenjak guilty under 18 U.S.C. § 1425(a) if the jury found that she had procured her naturalization "contrary to" the INA at 8 U.S.C. §§ 1427(a)(3) and 1101(f)(6), though the jury instructions did not actually cite those code sections. The district court instructed the jury that "false testimony" would defeat a finding of good moral character. The instructions did not, however, address whether the false testimony had to concern a material fact. On appeal Maslenjak has not challenged this aspect of the jury instructions, though she does raise other objections to the district court's instructions on good moral character. We address those challenges more fully below.

bound, so also is the government not bound. The fact that it has conceded a point in one case does not preclude it, without more, from changing its position in a later case.").

Still, it is one thing to take contrary positions in different cases "over the years." It is more problematic that the government has taken inconsistent positions on the materiality issue at key points in the case now before us. The government sought an indictment charging Maslenjak with making material false statements and even adduced proof at trial relevant to the materiality element only to argue at the charge conference and now on appeal that proof of materiality is not required.[10] The government's prevarication notwithstanding, our task is to determine whether the district court properly charged the jury on the elements of the offense, a task which begins and ends with a proper construction of the relevant statutes. Therefore, the government's inconsistency does not affect our analysis of the plain language of 18 U.S.C. § 1425(a) or any of the other statutes implicating Maslenjak's denaturalization.

The only compelling reason left to adopt the Ninth Circuit's approach to materiality in *Puerta* is the equity of mandatory denaturalization on anything less than proof of a materially false statement. As Maslenjak asserted at oral argument, denaturalization is a "unique" and "severe" sanction amounting to "banishment," and so the same evidentiary standard should apply whether the government seeks denaturalization in a civil proceeding or a criminal proceeding. Whatever appeal this rationale might have, the argument invites us to overlook the plain text of 18 U.S.C. § 1425(a) and disregard the overall statutory scheme Congress has enacted for denaturalization under the INA.

Construing 8 U.S.C. § 1451 and 18 U.S.C. § 1425 together, Congress has created two alternative approaches to denaturalization, one civil and one criminal. The denaturalization procedure established under 8 U.S.C. § 1451(a) is civil and equitable in nature, initiated simply by filing a petition in the district court where the citizen resides, and carries a "clear, unequivocal, convincing" standard of proof. Section 1451(e) creates a second statutory path to

---

[10]While Maslenjak calls attention to the discrepancy between the indictment and the jury instructions, she has not argued on appeal that the jury instructions resulted in a constructive amendment of the indictment. *See United States v. Hynes,* 467 F.3d 951, 962 (6th Cir. 2006) (holding that a constructive amendment of the indictment occurs where the defendant can show "a combination of evidence *and* jury instructions that effectively alters the terms of the indictment"). As a result, we need not consider this issue further.

denaturalization which is criminal in nature, because § 1451(e) makes denaturalization mandatory where the citizen is found guilty of violating 18 U.S.C. § 1425.  Obviously, the alternative procedure requires the government to seek an indictment and establish probable cause, afford the citizen all of the constitutional due process rights owed whenever a person is accused of a criminal act, and meet a higher burden of proof (beyond a reasonable doubt).[11]  *See Mandycz*, 447 F.3d at 962 ("Criminal cases offer many due process protections-*e.g.*, jury trial, indictment, beyond-a-reasonable-doubt burden of proof, right to counsel-that civil proceedings, including denaturalization proceedings, do not.").

Accepting then that Congress has provided two alternative procedures and standards of proof under § 1451(a) and § 1451(e), the explicit requirement of materiality under one approach but not the other is actually consistent with a two-track statutory scheme for denaturalization.  In a civil denaturalization suit, the government can bring its case simply by filing an equitable petition, proceed as in a civil case, and satisfy a lesser burden of proof than beyond a reasonable doubt.  In light of the slightly lower burden of proof, Congress has required the government to prove that the naturalized citizen has concealed a material fact.  By contrast, in a criminal case resulting in denaturalization, the government must prove the charge under 18 U.S.C. § 1425 beyond a reasonable doubt while meeting the demands of constitutional due process.  Congress has not required proof of materiality in that scenario arguably because of the higher burden of

---

[11]The Supreme Court has sent mixed signals about where the "clear, unequivocal, and convincing" standard of proof falls on the continuum of evidentiary burdens and particularly how it differs from proof beyond a reasonable doubt.  In an older decision, the Supreme Court described the "clear, unequivocal, and convincing" burden as "substantially identical with that required in criminal cases—proof beyond a reasonable doubt." *Klapprott v. United States*, 335 U.S. 601, 612 (1949).  Somewhat more recently, the Supreme Court described the "clear, unequivocal, and convincing" burden as an "intermediate standard" designed to "protect particularly important individual interests in various civil cases" including civil denaturalization proceedings under U.S.C. § 1451(a). *Addington v. Texas*, 441 U.S. 418, 424–25 (1979). The *Addington* court went on to remark in dicta that the word "unequivocal" "taken by itself means proof that admits of no doubt, a burden approximating, if not exceeding, that used in criminal cases." *Id.* at 432.  Later still, the Supreme Court considered the standard of proof in a deportation case and noted that "[t]he BIA for its part has required only 'clear, unequivocal and convincing' evidence of the respondent's deportability, not proof beyond a reasonable doubt." *I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).  This single comment suggests that the clear, unequivocal, and convincing burden of proof is an elevated standard but still just short of or only "approximating" proof beyond a reasonable doubt.  Otherwise, we have summarized the "clear, unequivocal, and convincing" standard as follows: "So, the omission of 'unequivocal' makes a difference.  The 'clear, unequivocal, and convincing standard' is a more demanding degree of proof than the 'clear and convincing' standard." *Ward v. Holder*, 733 F.3d 601, 605 (6th Cir. 2013).

proof, the additional safeguards for the naturalized citizen's constitutional rights, and the broad sweep of § 1425 itself.

So in a criminal prosecution under § 1425, the Constitution itself cures any concerns about the "gravity of the consequences" of mandatory denaturalization without requiring proof of materiality. *Puerta* at 1301. And if it were otherwise and materiality was a required element of both civil and criminal denaturalization proceedings, the government would have little incentive to ever pursue the denaturalization of a naturalized citizen for making false statements through a criminal indictment under 18 U.S.C. § 1425. The government could achieve the same result, denaturalization, by proving the same materiality element but in a civil proceeding under a lesser standard of proof and with less constitutional due process. Thus, reading an implied element of materiality into 18 U.S.C. § 1425(a) would yield yet another unintended, anomalous result. Despite the equities supporting Maslenjak's position, "[w]e are not at liberty to rewrite the statute to reflect a meaning we deem more desirable" but "[i]nstead, we must give effect to the text Congress enacted." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008). In the final analysis, we find the arguments and reasoning supporting an implied element of materiality under 18 U.S.C. § 1425 to be lacking.

Having established that materiality is not required to prove a violation of 18 U.S.C. § 1425(a) or 18 U.S.C. § 1015(a), we hold that the district court's instruction was a correct statement of the law. With this holding, we need not reach the issue of whether the government proved Maslenjak's false statements to be material.

**III.**

In her second claim on appeal, Maslenjak argues that the district court erroneously instructed the jury that it could also convict her under 18 U.S.C. § 1425(a) if it found that Maslenjak did not possess good moral character. As already mentioned, 8 U.S.C. § 1427(a)(3) establishes "good moral character" as a requirement for naturalization. 8 U.S.C. § 1427(a)(3). Although the INA does not define what "good moral character" is, the INA does define what it is not. Under 8 U.S.C. § 1101(f)(6), no one can be found to be a person of "good moral character" if the person "has given false testimony for the purpose of obtaining any benefit" under the INA.

8 U.S.C. § 1101(f)(6). In its instructions to the jury defining the "contrary to law" element of the offense under 18 U.S.C. § 1425(a), the district court stated that Maslenjak did not satisfy the "good moral character" requirement of 8 U.S.C. § 1427(a) if the government could show that she had given "false testimony for the purpose of obtaining any immigration benefit." ECF 62, Jury Instr., Page ID 1121.

On appeal, Maslenjak does not argue that false testimony to obtain an immigration benefit cannot satisfy § 1425(a)'s "contrary to law" element. Several circuits have affirmed denaturalization based on a naturalized citizen's false testimony and violation of the good moral character requirements of 8 U.S.C. § 1101(f)(6). *Munyenyezi*, 781 F.3d at 537 (affirming conviction under § 1425(a) and subsequent denaturalization under 8 U.S.C. § 1451(e) based on failure to meet "good moral character"); *United States v. Rogers*, 104 F.3d 355, 1996 WL 685759, at * 1 (2d Cir. Nov. 29, 1996) (same); *see also United States v. Suarez*, 664 F.3d 655, 658 (7th Cir. 2011) (affirming civil denaturalization under 8 U.S.C. § 1451(a) for underlying violation of 8 U.S.C. § 1101(f)(3) & (8)); *United States v. Dang*, 488 F.3d 1135, 1139–40 (9th Cir. 2007) (affirming civil denaturalization under 8 U.S.C. § 1451(a) for underlying violation of 8 U.S.C. § 1101(f)(6)); *United States v. Jean-Baptiste*, 395 F.3d 1190, 1193–94 (11th Cir. 2005) (affirming civil denaturalization under 8 U.S.C. § 1451(a) for underlying violation of 8 U.S.C. § 1101(f)(3) & (8)); *United States v. Sokolov*, 814 F.2d 864, 873–74 (2d Cir. 1987 (affirming civil denaturalization under 8 U.S.C. § 1451(a) for underlying violation of 8 U.S.C. § 1101(f)(6)). Instead Maslenjak argues that convicting her for lack of good moral character is unconstitutional. We find both of her constitutional arguments to be without merit.

**A.**

First, Maslenjak contends that her conviction amounts to an unconstitutional criminal punishment based on her status. The Supreme Court has held that a state law criminalizing status and not conduct violates the Eighth Amendment's prohibition on cruel and unusual punishment. *Robinson v. California*, 370 U.S. 660, 667 (1962) (striking down a criminal law against being drug addict); *but see Powell v. State of Tex.*, 392 U.S. 514, 533 (1968) (upholding a criminal law against public drunkenness). In other words, the law can only punish "doing" (the *actus reus*) and not merely "being" (what could be called the *status reus*). Maslenjak's

conviction does not run afoul of this principle. Maslenjak was found guilty of knowingly procuring her naturalization contrary to law, and her guilty act was illegally procuring or obtaining her naturalization. Section 1425(a) criminalizes conduct and not status by punishing the act of knowingly procuring naturalization in some way contrary to the laws applicable to naturalization. Section 1425(a) does not make it a crime to lack good moral character. Maslenjak's first constitutional challenge is not convincing.

It is true that the government's theory of the case was based on Maslenjak's ineligibility for naturalization. The United States presented proof at trial and argued to the jury that Maslenjak was not eligible for naturalization because of her false testimony about the answers on her N-400 Application for Naturalization. Under 8 U.S.C. § 1101(f)(6), Maslenjak's false testimony for the purpose of obtaining a benefit disqualified her as a candidate for naturalization. And it is well-established that "[c]itizenship is illegally procured any time the applicant has failed to comply with any of the congressionally imposed prerequisites to the acquisition of citizenship." *United States v. Sprogis*, 763 F.2d 115, 117 n.2 (2d Cir. 1985) (quoting *Fedorenko*, 449 U.S. at 506)). Maslenjak was not found guilty of a particular status, i.e. a lack of good moral character, but guilty of culpable conduct, i.e. procuring her naturalization with the knowledge that she was ineligible because she had given false testimony.

Maslenjak again relies on the Ninth Circuit's decision in *Puerta* for support. The Ninth Circuit held there that "simply being a person who cannot establish [good moral character] in court is not a crime." *Puerta*, 982 F.2d at 1302. The Ninth Circuit's reasoning on this point is not persuasive. In a prosecution under 18 U.S.C. § 1425(a), the defendant does not have the burden to establish anything at all, including her good moral character. It is the government's burden to prove beyond a reasonable doubt that the defendant knowingly procured her naturalization in some way contrary to law, all in violation of a criminal statute, 18 U.S.C. § 1425(a). Although the INA at 8 U.S.C. § 1101(f)(6) defines what good moral character is not, the INA does not make it crime to lack good moral character. The Ninth Circuit also concluded that Congress had only addressed false testimony in an immigration proceeding at 8 U.S.C. § 1101(f)(6). But, as we have already noted, the Ninth Circuit's observation is not an accurate statement of law. Congress has actually made it a crime to make "any false statement under

oath" in a matter related to naturalization pursuant to 18 U.S.C. § 1015(a). As such, there is no support for Maslenjak's claim that 8 U.S.C. § 1101(f)(6) somehow creates a status-based crime for lacking good moral character.

**B.**

Second, Maslenjak claims that the INA's good moral character requirement is unconstitutionally vague. "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 148–49 (2007) (other quotations omitted)). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). A challenge based on a statute's purported vagueness must be considered on "an as-applied basis" so long as the statute does not involve First Amendment rights. *Johnson v. United States*, 135 S. Ct. 2551, 2580, (2015) (Thomas, J., concurring) (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975)). Where as here a defendant challenges a statute for vagueness under the Due Process Clause, the challenge "rest[s] on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). "Thus, in a due process vagueness case, we will hold that a law is facially invalid only if the enactment is impermissibly vague in *all* of its applications." *Johnson v. United States*, 135 S. Ct. at 2580 (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982)).

We hold that 8 U.S.C. § 1101(f)(6) is not unconstitutionally vague as applied to Maslenjak.[12] That section specifies that "[n]o person shall be regarded as, or found to be, a

---

[12]Maslenjak argues in her opening brief that 8 U.S.C. § 1101(f)(9), the statute's catch-all provision, is unconstitutionally vague. That paragraph follows a non-exhaustive list of factors that will preclude a finding of good moral character; the paragraph states as follows: "The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." 8 U.S.C.§ 1101(f)(9).

person of good moral character who, during the period for which good moral character is required to be established, is, or was one who has given false testimony for the purpose of obtaining any benefits under this chapter." 8 U.S.C.A. § 1101(f)(6). The statute defines a series of factors which will preclude a finding of good moral character. The particular factor challenged by Maslenjak defines conduct, giving false testimony, and calls for the determination of "clear questions of fact" susceptible to "a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying' or 'indecent.'" *Williams*, 553 U.S. at 306; *see also Dang*, 488 F.3d at 1141 (holding that 8 U.S.C. § 1101(f)(9), the good moral character catch-all provision and its implementing regulation was not unconstitutionally vague as applied in that case). Therefore, we reject Maslenjak's vagueness challenge.

## C.

Maslenjak next challenges the district court's instructions to the jury about what the government had to prove to show that Maslenjak had given false testimony for the purpose of procuring an immigration benefit and how her false testimony meant she did not meet the INA's good moral character requirement. Specifically, Maslenjak argues that the district court failed to explain that "testimony" under § 1101(f)(6) had to be an oral statement or that Maslenjak had to give false testimony with the specific intent to obtain an immigration benefit. The Supreme Court in *Kungys* carefully construed § 1101(f)(6) and concluded that the false testimony described in the statute need not be material in order to find that a person lacked good moral character. In explaining why its "literal reading of the statute does not produce draconian results," the *Kungys* court first noted that "'testimony' is limited to oral statements made under oath" and does not include "other types of misrepresentations or concealments, such as falsified documents or statements not made under oath." *Kungys*, 485 U.S. at 780 (citations omitted). Whether a statement or misrepresentation qualifies as "testimony" is a question of law. *Id.* at 782. The Supreme Court also explained that its literal reading of § 1101(f)(6) did not produce

---

We need not reach this issue because the district court did not instruct on this theory, and Maslenjak has otherwise failed to demonstrate how this paragraph was "applied" to her. Maslenjak does claim that "[n]othing in the instructions defined 'good moral character' or even limited the methods by which the government could prove that Ms. Maslenjak lacked good moral character." Opening Br. 43. But Maslenjak's claim is belied by what the district court actually stated in its charge to the jury. The district court explained only one means of establishing a lack of good moral character, and that was giving "false testimony for the purpose of obtaining any immigration benefit."

unduly harsh results because that section "applies to only those misrepresentations made with the subjective intent of obtaining immigration benefits" and not "misrepresentations made for other reasons, such as embarrassment, fear, or a desire for privacy, . . . ." *Id.* at 780. Whether the applicant acted with the required intent is, of course, a question of fact for the jury. *Id.* at 782.

We hold that the district court did not abuse its discretion because the instructions, taken as a whole, accurately reflected the law. *Ross,* 502 F.3d at 527. With respect to the instructions about the necessary intent, the jury charge clearly stated that "[g]iving false testimony for the purpose of obtaining any immigration benefit precludes someone from being regarded as having good moral character," which in turn means "the applicant is not entitled to naturalization." ECF 62, Jury Instr., Page ID 1121. This instruction is a clear and accurate statement of law. Therefore, no abuse of discretion occurred.

As for the instruction about "false testimony," the district court did not define "testimony" to limit the term to oral statements and did not instruct the jury which of Maslenjak's statements constituted "testimony." More fundamentally, the district court did not recognize that the issue of whether any of Maslenjak's statements even met the legal definition of "testimony" under 8 U.S.C. § 1101(f)(6) was a question of law. The instruction as given did not address any of these aspects of the "false testimony" element, as the Supreme Court described it in *Kungys.* Nevertheless, when viewed as a whole, it cannot be said that the jury instructions were "confusing, misleading, or prejudicial." *Richardson*, 793 F.3d at 629.

And even if the district court's instruction about "testimony" was erroneous, the error was harmless. The harmless-error standard applies "to cases involving improper instructions on a single element of the offense." *Neder v. United States*, 527 U.S. 1, 9 (1999); *Richardson*, 793 F.3d 612, 631 ("[A] jury instruction that misdescribes or omits an element of an offense is subject to harmless error review.") (citation omitted). Any error regarding the jury instruction on the single element of "false testimony" was harmless in this case. The record is replete with oral statements made by Maslenjak under oath during her interviews with immigration officials, which meet the legal definition of "testimony." Perhaps more importantly, the evidence the jury heard does not include any other proof "that could rationally lead to a contrary finding with

respect to the omitted element." *Richardson*, 793 F.3d at 632 (quoting *Neder*, 527 U.S. at 19). Therefore, any error in the jury instructions was harmless.

**IV.**

For the reasons stated here, we **AFFIRM** the judgment of the district court.

---

**CONCURRENCE**

---

JULIA SMITH GIBBONS, concurring.   I concur with some reluctance in the lead opinion's carefully-reasoned analysis.   Initially, I was not inclined to differ from our sister circuits' interpretation of 18 U.S.C. §1425(a), but this analysis has persuaded me that the view most faithful to the statute is that materiality is not an element of the §1425(a) offense.

I am uncertain what goal Congress intended to further by omitting materiality from the elements of §1425(a).  I have located no other federal criminal statute that punishes a defendant for an immaterial false statement.   Nor have I located any analogous context in which the elements of a crime are less onerous than the elements of the related civil penalty proceeding.

Finally, I echo a point made in the lead opinion but put it more bluntly.   The government's inconsistency in this case and on this issue is puzzling and indeed inappropriate. This is particularly so because the government, in response to questioning at oral argument, was unable to articulate any interest of the United States in prosecuting statements that are immaterial.

For all these reasons, our result here is troublesome.  Yet we are not free to select our own notion of the best result in a case but instead are guided by what the law requires.  That principle trumps any reluctance about joining the lead opinion.